1

2

3 **10-CV-02094-CMP**

4

5

6

7

8

9

_____ FILED _____ ENTERED
_____ LODGED_____ RECEIVED

DEC 3 0 2010   **DJ**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT O. WASHINGTON
                                    DEPUTY

# THE UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

10 DAISY FIDEL AND CORAZON A. DIVINA,      )

11                              Plaintiff,      )

12       v.                                     )

13 DEUTSCHE BANK NATIONAL TRUST      )
   COMPANY, AS TRUSTEE FOR LONG      )
14 BEACH MORTGAGE TRUST 2006-1      )
                            Defendant.      )
15                                             )

16 _____)

No. **CV102094**

**VERIFIED COMPLAINT FOR
QUIET TITLE**

**JURY TRIAL DEMANDED**

17 The undersigned Complainants, DAISY FIDEL AND CORAZON A. DIVINA, hereinafter

18 "Plaintiffs", HEREBY states that Plaintiffs are of legal age and competent to state on belief and

19 personal knowledge that the facts set forth and noted below are true, correct, complete and

20 presented in good faith in the form of this VERIFIED COMPLAINT FOR QUIET TITLE because of a

21

22 claim against the Plaintiff's real property asserted by Defendant: DEUTSCHE BANK NATIONAL

23 TRUST COMPANY, AS TRUSTEE FOR LONG BEACH MORTGAGE TRUST 2006-1, in regards to an

24 unlawful foreclosure of a fraudulent mortgage Loan obligation allegedly secured by an invalid

25 DEED OF TRUST described below as follows (all emphasis may be considered as added):

26

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 1 of 21

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

# PARTIES AND VENUE

1. Plaintiffs, in statutory capacity, are residents of **King** County, Washington and established in good faith as Inhabitants of Washington state in private corporeal capacity, having a paramount security interest over the Plaintiffs and the Subject Property, having claims both registered and unregistered, whose mailing address is:

**25311 150th Pl SE, Covington, WA 98042**

2. Plaintiffs are the party of record with exclusive rights, title and interest to the below described Subject Property, according to the official public records of **King** County, Washington;

3. Defendant: DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR LONG BEACH MORTGAGE TRUST 2006-1 whose address is: **60 WALL STREET, NEW YORK, NY 10005.**

4. The subject property is located in **King** County, Washington and is legally described as:

> LOT 31, MERIDIAN TRACE, According to the plat, recorded in Volume 92 of plats, page 92, in King County, Washington.

The Subject Property has an **Assessor's Parcel Number: 546930-0310**; and is also commonly known as: **25311 150th Pl SE, Covington, WA 98042**

# JURISIDICTION

5. Plaintiff is proceeding without assistance of counsel, is unschooled in law, proceeding *in propria persona*, requesting the court accept direction from *Haines v. Kerner*, 404 U.S. 519 (1972), *Boag v. MacDougall*, 545 US 360 (1982), *Puckett v. Cox* 456 F2d 233 (1972 Sixth Circuit USCA), and *Conely v. Gibson*, 355 US 41 at 48(1957), wherein the court has

VERIFIED COMPLAINT
FOR QUIET TITLE

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

directed those who are unschooled in law making pleadings shall have the court look to the substance of the pleadings rather than the form.

6. The jurisdiction of this Court to hear this claim is per United States Code (USC) Title 28, Section 1331, Federal Question; and the Constitution for the United States of America, Article III, §§ 1,2.

7. The Amount in controversy exceeds $75,000.00.

8. This is an action to Quite Title pursuant to RCW 7.28.010 which provides in part:

> 'Any person having a valid and subsisting interest in real property, and a right to the possession thereof, may recover the same by an action in the superior court of the proper county ... and may have judgment in such action quieting or removing a cloud from Plaintiff's title.'

9. Jurisdiction arises under 42 USC § 1963 et seq. as well as the Constitution of the United States and in particular the 7th amendment as this is a "suit at common law".

10. This is a case that arises under Article 4, section 4 of the national Constitution; and, the Thirteenth and Fourteenth Amendments to the national Constitution regarding involuntary servitude, enticement to slavery and other civil rights matters.

11. Title 18 USC regarding fictitious obligations, mail fraud and wire fraud.

12. TILA - Truth in Lending Act (16 USC § 1601), HOEPA - Home Ownership Equity Protection Act (12 CFR 226.32 et. seq.), RESPA - Real Estate Settlement Procedures Act (12 USC § 2601).

13. Title 12 USC § 1813 for definition of a deposit and other provisions of Title 12 USC and Title 18 USC; 12 U.S.C. 1813(i)(1); 12 U.S.C. 1813n (GAAP).

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 3 of 21

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

14. Title 12 CFR § 226.32 commonly known as 'Section 32' of Regulation Z, which implements the TRUTH AND LENDING ACT (TILA).

15. This matter also includes a Common Law Claim for [past] financing (note), repair, maintenance, improvement, or performance of an obligation of the Subject Property regarding corporeal substance of Plaintiff's sweat equity grounded in international and Common Law jurisdiction pursuant to RCW 4.04.010.

## RELEVANT FACTS

16. **December 30, 2010**: Washington State Department of Licensing, Uniform Commercial Code, Debtor information Search Report, Search Number 2010-364-5991-0S certifies no Security Agreements exists between Plaintiff(s), as Debtor(s), and Defendant, as Secured Party Creditor (see attached Exhibit "**A**").

17. **October 14, 2010**: Due to suspicious activities and fraudulent claims asserted by Defendant, Plaintiffs recorded a UCC Filing (20101019000389) to establish the highest form of claim/lien (title) for the Subject Property, a substantive Common Law claim/lien (see Exhibit "**B**") protecting Plaintiff's expenditure of life blood, time, labor, energy, sweat and toil for past financing, for the Note, for repair, for maintenance, for improvement, and for performance of an obligation of the Subject Property, even if incompletely and/or inadequately performed; Common Law Liens supersede mortgages and equity Liens; *Drummons Carriage Co. v. Mills* (1898) 74 NW 966; *Hewitt v. Williams* 47 LaAnn, 742, 17 So. 269; *Carr v. Dail*, 19 SE 235; *McMahon v. Lundin*, 58 NW 827; said lien is undisputed and constitutes an admissible genuine issue of material fact in favor of Plaintiff's claim.

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 4 of 21

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

18. **December 16, 2010:** Completed independent Securitization Audit and Affidavit relevant to the Subject Property, attached as Exhibit "**C**" as if restated and incorporated herein this Cause of Action; the said audit and affidavit constitute an admissible genuine issue of material fact in favor of the Plaintiff's Claim. Plaintiffs rely on the Securitization Auditor as an expert witness having "special knowledge of the subject about which he is to testify" 26 A. 2d 770, 773; "An affidavit containing admissible expert opinion on a significant issue of fact is generally sufficient to create a genuine issue of fact." *J.N. v. Bellingham School Dist. No. 501*, 74 Wn. App. 49, 871 P.2d 1106.

19. **December 15, 2010:** Completed independent Forensic Audit and Affidavit relevant to the Subject Property, attached as Exhibit "**D**" as if restated and incorporated herein this Cause of Action; the said audit and affidavit constitute an admissible genuine issue of material fact in favor of the Plaintiff's Claim. Plaintiffs rely on the Forensic Auditor as an expert witness having "special knowledge of the subject about which he is to testify" 26 A. 2d 770, 773 "An affidavit containing admissible expert opinion on a significant issue of fact is generally sufficient to create a genuine issue of fact." *J.N. v. Bellingham School Dist. No. 501*, 74 Wn. App. 49, 871 P.2d 1106.

20. **June 3, 2009:** Assignment of Deed of Trust (20090603001628) recorded in King County, Washington attached as Exhibit "**E**". Plaintiffs rely on said Assignment of Deed of Trust, not as a *good* assignment but, as establishing a genuine issue of material fact of fraud and supporting Plaintiff's claim.

21. **November 2, 2005:** Plaintiffs acquired the Subject Property as evidenced by a Deed recorded at King County, Washington Auditor's file number (20051110002194) (copy

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 5 of 21

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

attached as Exhibit "**F**"); the said Deed is Plaintiff's **un**disputed claim on the Subject Property and Plaintiffs see no proof to the contrary.

**FIRST ARGUMENT:** <u>SECURITIES FRAUD</u>

22. Plaintiffs rely on the independent Securitization Audit and Affidavit attached hereto as Exhibit "**C**" as if incorporated herein restated herewith this Cause of Action as an admissible genuine issue of material fact in favor of the Plaintiff's Claim.

23. Plaintiffs allege said Securitization Audit and Affidavit exposes Mortgage Backed Securities Fraud and hence, mandatory forfeiture(s) of Defendant's claim(s) as follows:

    a. Plaintiffs were enticed through predatory, fraudulent, unlawful lending practices to execute a Note and Deed of Trust agreement which turned out to have cognovit clauses and is unconscionable as evidenced by the Forensic Audit (Exhibit "**D**"); "Party having superior knowledge who takes advantage of another's ignorance of the law to deceive him by studied concealment or misrepresentation can be held responsible for that conduct." *Fina Supply Co. v. Abilene National Bank*, 726 S.W. 2d 537 (1987);

    b. Said Securitization Audit located the alleged Note in the **LONG BEACH MORRGAGE LOAN TRUST 2006-1** (hereinafter "Investment Vehicle"); Notes are transferred by 'endorsement' and Plaintiffs presume the Note is endorsed; and,

    c. The alleged Note was deposited in said 'Investment Vehicle' on or before **February 1, 2006**; and,

    d. Mortgage back securities were issued in exchange for the alleged Note; however,

VERIFIED COMPLAINT
FOR QUIET TITLE

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

    e.  There is no record of the related 'Deed of Trust', which allegedly secured the said Note, being placed in the 'Investment Vehicle'; hence, the securities issued as 'mortgage backed' were, in fact, NOT mortgage backed; and,

    f.  Plaintiffs allege this constitutes mortgage backed securities fraud because the securities issued as mortgage backed were, in fact, NOT mortgage backed;

    g.  Plaintiffs were unwittingly involved and used to defraud securities investors;

    h.  Defendant has or seeks to benefit from the unconscionable transaction.

24. Said fraud subjects the Defendant to forfeiture of claims on the subject property; Plaintiffs see no proof to the contrary. "Fraud destroys the validity of everything into which it enters. It affects fatally even the most solemn judgments and decrees." *Ira Nudd v. George Burrows* 91 U.S. 426 at 440 (1875).

**SECOND ARGUMENT:** <u>PREDATORY LENDING PRACTICES</u>

25. Plaintiffs rely on the Forensic Audit and Affidavit attached hereto as Exhibit "E" as if incorporated herein restated herewith this Cause of Action as an admissible genuine issue of material fact in favor of Plaintiff's claim.

26. Plaintiffs allege said Forensic Audit and Affidavit evidences that TILA violations, RESPA violations and Predatory Lending Practices were employed to get the Plaintiffs into an unlawful loan for the ultimate purpose of selling the beneficial interest of the unlawful loan to an investor with intent to defraud the investor; and, with the intent to victimize the Plaintiffs as a means to cover the fraud. Fraud "usually consists of a misrepresentation, concealment, or nondisclosure of a material fact, or at least misleading conduct, devices, or contrivance." *Keers and Co. v. American Steel and Pump*

VERIFIED COMPLAINT
FOR QUIET TITLE

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

Page  7 of 21

1   *Corp.* 234 F. supp. 201, 203 (S.D.N.Y. 1964).

2   27. Plaintiffs allege said fraud scheme resulted in forfeiture(s) of Defendants claims.

3   28. Plaintiffs allege that even **'if'** the statutory damages are now time-barred or barred in

4   an action for quiet title, <u>the 'facts' are not barred and the 'facts' are admissible and serve

5   to establish a genuine issue of material fact in support of the Plaintiff's claims</u>.

6   "EquiFirst, when making the loan, violated Regulation Z of the Federal Truth in Lending

7   Act 15 USC § 1601 and the Fair Debt Collections Practices Act 15 USC § 1692;

8

9   "[i]ntentionally created fraud in the factum" and withheld from Defendant

10   [/borrower]... "vital information concerning said debt and all of the matrix involved in

11   making the loan" <u>*Deutsche Bank v. Peabody*</u>, 866 N.Y.S. 2d. 91 (2008)**;**

12

13   **THIRD ARGUMENT:** <u>FAILED ASSIGNMENT OF DEED OF TRUST</u>

14   29. Plaintiffs also rely on the Assignment of Deed of Trust (20090603001628) attached as

15   Exhibit **"E"** as an admissible genuine issue of material fact in favor of Plaintiff's claim.

16   30. Plaintiffs allege said Assignment fails to deliver and re-join the Deed of Trust to the

17   Note Holder; the underlying trust between Borrower and Lender was broken when the

18

19   Note and Deed of Trust was separated; and, Plaintiffs have not agreed to restore the

20   trust; Plaintiffs are granting no waiver and hence, the said assignment failed.

21   31. Plaintiffs also allege said Assignment is the Defendant's **'admission'** in support of the

22   fact that the Deed of Trust was <u>NOT</u> placed into the said Investment Vehicle with and at

23   the same time as the subject Note; hence, the assignment is a fraud and fails to convey

24   any right, title or interest to the Defendant. "UCC § 3-305 TRANSFER OF INSTRUMENT:

25   RIGHTS ACQUIRED BY TRANSFER (c) Transfer of an instrument, whether any right of

26

VERIFIED COMPLAINT
FOR QUIET TITLE

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

the transferor is a negotiation, vests in the transferee any right to the transferor to enforce the instrument, including any right as a holder in due course, <u>but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument</u>."

32. Plaintiffs allege the related Assignment of Deed of Trust is fraudulent and void and must fail to pass any right, title and interest due to above stated fraud, violations of lending laws, predatory lending practices and separation from Note. In *Kluge v. Fugazy*, 145 AD2d 537, 536 NYS2d 92 [2nd Dept., 1988] the Court held that "the assignment of a mortgage without transfer of the debt is a nullity and a cause of action for foreclosure must fail."; In *Merritt v. Bartholick*, 36 NY 44 [1867] the Court of Appeals held that "a mortgage is but an incident to the debt which it is intended to secure (cites omitted), the logical conclusion is that a transfer of the mortgage without the debt is a nullity, and no interest is assigned by it. The security cannot be separated from the debt, and exist independently of it. This is the necessary legal conclusion, and recognized as the rule by a long course of judicial decisions."; In *MERSCORP, INC. v. Romaine*, 8 NY3d90, 828 NYS2d 266 [2006], Justice Ciparick, in her concurring opinion specifically notes that 'the Court's ruling left for another day the argument "that MERS has violated the clear prohibition against separating a lien from its debt."; "To establish a prima facie case in an action to foreclose a mortgage, the Defendant must establish the existence of the <u>mortgage and the mortgage note</u>. It is the law's policy to allow only an aggrieved person to bring a lawsuit . . . A want of 'standing to sue," in other words, is just a way of saying

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 9 of 21

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

that this particular Defendant is not involved in a genuine controversy, and a simple syllogism takes us from there to a "jurisdictional" dismissal" *Indymac Bank v. Bethley*, 880 N.Y.S. 2d 873 (2009); "The contract is void if it is only in part connected with the illegal transaction and the promise single or entire." *Guardian Life Insurance v. Guardian Mut. Savings Bank*, 227 Wis. 550, 279 N.W. 79 (1938).

33. Plaintiffs allege the Defendant's claims to, in and on the Subject Property have been extinguished due to the said acts of fraud.

**FOURTH ARGUMENT:** BREACH OF DEED OF TRUST

34. Plaintiffs allege the underlying trust between Lender and Borrower memorialized by a Deed of Trust has been breached and irreparably broken due to the following:

   a.  Securities Fraud as evidenced by said Securitization Audit and Assignment of Deed of Trust explained above.

   b.  Violations of lending laws, fraud, predatory lending practices as evidenced by said Forensic Audit.

   c.  Violations of GAAP and FASB rules by failing to account for Plaintiff's deposited mortgage Note and crediting Plaintiff accordingly **(FAS 125)**; and failing to deliver a deposit receipt to the Plaintiff.

   d.  Cognovit intentions and clauses as to the role of Loan Servicer, now evident, for effecting the separate holding of the Note and Deed of Trust, for actually executing a foreclosure rather than adhere to the limitations of merely supervising a foreclosure, for property tax and income tax evasion, for avoiding county recording fees, for establishing a new private form of government by

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 10 of 21

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

insurgency to overthrowing the Public Records kept by the County Recorder of Deeds and nullifying centuries old customs and others laws requiring the recordation of property deeds, conveyances, transfers and assignments in the public record of the county in which the property is located. "Party having superior knowledge who takes advantage of another's ignorance of the law to deceive him by studied concealment or misrepresentation can be held responsible for that conduct." _Fina Supply Co. v. Abilene National Bank_, 726 S.W. 2d 537 (1987).

e. Plaintiffs actually thought **and agreed** only that Loan Servicer was a service that ensured all documents <u>would be</u> properly recorded and cared for not the opposite and not operate in the capacity of beneficiary without tendering payment; "A lawful consideration must exist and be tendered to support the Note."; _Anheuser-Busch Brewing Company v. Emma Mason_, 44 Minn. 318, 46 N.W. 558 (1890); This is also a breach of agreement.

f. There is no Assignment of Deed of Trust from **Long Beach Mortgage Company**, as Beneficiary, issued to **Long Beach Mortgage Loan Trust 2006-1**; and, no Assignment of Deed of Trust from **Long Beach Mortgage Loan Trust 2006-1, as Successor Beneficiary,** to the Defendant, in the public record; hence, the chain of assignments is broken.

g. The act of having the Note and Deed of Trust held separately breached the trust, unsecured the Note and rendered the Deed of Trust void, securing nothing. "If the actor's conduct is a substantial factor in bringing about harm to another, or

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 11 of 21

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

the manner in which it neither foresaw nor should have for seen the extent of the harm or the manner in which it occurred does not prevent him from being liable." *Beasley v. U.S.*, 81 F. Supp. 518; "The contract is void if it is only in part connected with the illegal transaction and the promise single or entire." *Guardian Life Insurance v. Guardian Mut. Savings Bank*, 227 Wis. 550, 279 N.W. 79 (1938).

**FIFTH ARGUMENT:** <u>VOID 'PROMISSORY NOTE' AND INVALID DEFAULT</u>

35. Plaintiffs allege the related mortgage Note is void because it was obtained by fraud, under false pretenses, through violations of lending laws, predatory lending practices. "Fraud destroys the validity of everything into which it enters. It affects fatally even the most solemn judgments and decrees." <u>*Ira Nudd v. George Burrows*</u> 91 U.S. 426 at 440 (1875).

36. Plaintiffs allege the original mortgage Note, prepared by the Lender, states: '*...... for a loan I have received......'* is a fraud as follows:

   a.  At the time the Note was executed, Plaintiffs had received no loan;

   b.  Plaintiffs signed the Note in *good faith* of receiving a loan but never did;

   c.  Plaintiffs never received a receipt for deposit of the Note;

   d.  Plaintiffs never received any benefit from deposit of the Note;

   e.  The Note, on its face, implicates the Plaintiffs as an accomplices in the scheme to defraud the investors, to which the Plaintiffs had no knowledge or desire to participate in;

   f.  "Party having superior knowledge who takes advantage of another's ignorance

VERIFIED COMPLAINT
FOR QUIET TITLE

Page  12 of 21

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

of the law to deceive him by studied concealment or misrepresentation can be held responsible for that conduct." _Fina Supply Co. v. Abilene National Bank_, 726 S.W. 2d 537 (1987).

37. Plaintiffs allege the mortgage Note is unproven; the signatures shown on a copy of the Note do not appear to be notarized and are unidentifiable, unreliable and inadmissible without lawful presentment under notary seal. "A bank is not the holder in due course upon merely crediting the depositors account." _Bankers Trust v. Nagler_, 23 A.D.2d 645, 257 N.Y.S.2d 298 (1965).

38. Plaintiffs have not been presented with any Note under notary seal or otherwise.

39. Plaintiffs allege there was no loan as evidenced by a certified accounting, audit, loan check or similar instrument;

40. Plaintiffs allege any waiver of presentment of the Note is void because the waiver was obtained by fraud, under false pretenses, through violations of lending laws, predatory lending practices for cognovit purposes; "A lawful consideration must exist and be tendered to support the Note."; _Anheuser-Busch Brewing Company v. Emma Mason_, 44 Minn. 318, 46 N.W. 558 (1890); "If any part of the consideration for a promise be illegal, or if there are several considerations for any unseverable promise one of which is illegal, the promise, whether written or oral, is wholly void, as it is impossible to say what part or which one of the considerations induced the promise." _Menominee River Co. v. Augustus Sples L & C Co._, 147 Wis. 559 at p. 574: 132 NW 1118 (1912).

41. Plaintiffs allege NO 'default' has been proven; the signature declaring a 'default' is not sworn or notarized and is thus unidentified, unreliable and inadmissible.

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 13 of 21

Daisy D. Fidel, Plaintiff
25311 150th Pl SE
Covington, WA 98042

42. Plaintiffs allege failure to make presentment of the Note to the Plaintiffs estopped all foreclosure proceedings and unlawful detainer proceedings *nunc pro tunc* on the alleged date of closing.

**SIXTH ARGUMENT:** ACTS OF SUCCESSOR TRUSTEE INVALID

43. Plaintiffs allege the related Appointment of Successor Trustee **(20090603001629)** attached as **(Exhibit "G")** is false, incorrect, invalid, void and failed to appoint the Successor Trustee: **NORTHWEST TRUSTEE SERVICES, INC.,** due to above stated fraud, violations of lending laws, predatory lending practices and separating the Deed of Trust from the Note, failure to make a presentment of the Note to Plaintiffs; Defendant lacked Standing to make the said Appointment attached as **(Exhibit "G")**.

44. Furthermore, non-judicial foreclosures must also conform to the principle of Federal Rule of Civil Procedure 17(a) (1) that "[a]n action must be prosecuted in the name of the real party in interest." See also, *In re Jacobson*, 402 B.R. 359, 365-66 (Bankr. W.D. Wash. 2009); *In re Hwang*, 396 B.R. 757, 766-67 (Bankr. C.D. Cal. 2008).

45. Plaintiffs allege the 'Beneficiary Declaration of Note Holder' relied upon by the Successor Trustee is not sworn or notarized, is unproven, unreliable, false, incorrect and void due to the above stated fraud, violations of lending laws, predatory lending practices and separating the Deed of Trust from the Note, failure to make a presentment of the Note to Plaintiffs. Fraud "usually consists of a misrepresentation, concealment, or nondisclosure of a material fact, or at least misleading conduct, devices, or contrivance." *Keers and Co. v. American Steel and Pump Corp.* 234 F. supp. 201, 203 (S.D.N.Y. 1964).

46. Plaintiffs allege all the acts of the Successor Trustee from requisite letters and notices,

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 14 of 21

Daisy D. Fidel, Plaintiff
25311 150th Pl SE
Covington, WA 98042

answers, validations, Notice of Default, Notice of Trustee Sale, through to a Trustee's Deed are void and must fail to perform and/or pass any right, title and interest due to above stated fraud, violations of lending laws, predatory lending practices and separating the Deed of Trust from the Note, failure to make a presentment of the Note to Plaintiffs. "The contract is void if it is only in part connected with the illegal transaction and the promise single or entire." *Guardian Life Insurance v. Guardian Mut. Savings Bank*, 227 Wis. 550, 279 N.W. 79 (1938).

**SEVENTH ARGUMENT:** ESTOPPELS

47. Plaintiffs allege Defendant's past failure to answer the Plaintiff's Qualified Written Request is also an estoppel to the Defendant's foreclosure action and another violation of RESPA and TILA; "Silence can only be equated with fraud where there is a legal or moral duty to speak or when an inquiry left unanswered would be intentionally misleading." *U.S. v. Tweel*, 550 F.2d 297 (1977); "Your silence is your acquiescence." *Connally v. General Construction Co.*, 269 U.S. 385, 391.

48. Based upon the evidence submitted, Plaintiffs allege the Defendant deprived the Plaintiffs of civil rights, due process of law and equal protection under the law, through predatory lending practices employed to deprive Plaintiffs of valuable Subject Property without due process of law and Plaintiffs see no proof to the contrary.

**TRIAL:**

49. Plaintiffs allege "Quiet Title [is] an equitable action to determine all adverse claims to the property in question; a suit in equity brought to obtain a final determination as to the title of a specific piece of property, such a suit is usually the result of various

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 15 of 21

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

individuals asserting contradictory rights to the same parcel of land. In such a situation, the court, in order to prevent a multiplicity of suits, will bring all the interested parties together to determine the right and ultimately issue an injunction." 164 N.W. 388, 341.

50. Based upon the evidence submitted, the Plaintiffs allege the Defendant's right, title and interest to the Subject Property, is extinguished, *void ab initio*; and, Plaintiffs see no proof to the contrary. "A trial is not useless, but absolutely necessary, where there is a genuine issue as to any material fact." *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963).

## FEDERAL QUESTION

The Plaintiffs bring this matter forth to this Court on the grounds of **FEDERAL QUESTIONS** relating to violations of civil rights, constitutional matters, fraud, securities fraud, various matters of accounting pursuant to GAAP, violations of RESPA, TILA and Predatory Lending Violations, issues of securitization and then procedural issues and matters in regards to loan origination, recordation of documents, notarization, authority of signatories, assignments, appointments, notices, subsequent trustee's sale and trustee's deed (if any).

## FIRST CAUSE OF ACTION

Plaintiffs re-allege and incorporate by reference in this Cause of Action each allegation set forth in paragraphs 1 though 50 above. Plaintiffs were unwittingly involved and used to commit Mortgage Backed Securities Fraud from which the Defendant has or intends to benefit; and, the Plaintiffs are therefor damaged by the Defendant's acts; accordingly, Plaintiffs pray for a judgment for forfeiture of Defendants claims.

VERIFIED COMPLAINT
FOR QUIET TITLE

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

Page 16 of 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## SECOND CAUSE OF ACTION

Plaintiffs re-allege and incorporate by reference in this Cause of Action each allegation set forth in paragraphs 1 though 50 above. Plaintiffs were enticed into an unconscionable Loan agreement including a Note and Deed of Trust with cognovit intentions through predatory loan practices, violations of lending laws and fraud from which the Defendant has or intends to benefit; and, the Plaintiffs are therefor damaged by the Defendant's acts; accordingly, Plaintiffs pray for a judgment forfeiting Defendants claims.

## THIRD CAUSE OF ACTION

Plaintiffs re-allege and incorporate by reference in this Cause of Action each allegation set forth in paragraphs 1 though 50 above. A fraudulent, failed, invalid Assignment of Deed of Trust was recorded against the Plaintiff's subject property from which the Defendant has or intends to benefit; and, the Plaintiffs are therefor damaged by the Defendant's acts; accordingly, Plaintiffs pray for a judgment invalidating the subject Assignment of Deed of Trust and removing it from the public record.

## FOURTH CAUSE OF ACTION

Plaintiffs re-allege and incorporate by reference in this Cause of Action each allegation set forth in paragraphs 1 though 50 above. Plaintiffs were enticed into an unconscionable Loan agreement including an Application, Note and Deed of Trust with cognovit clauses and intentions through predatory loan practices, violations of lending laws and fraud from which the Defendant has or intends to benefit; and, the Plaintiffs are therefor damaged by the Defendant's acts; accordingly, Plaintiffs pray for a judgment for rescission of Plaintiff's

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 17 of 21

Daisy D. Fidel, Plaintiff
25311 150th Pl SE
Covington, WA 98042

1 signature from the unconscionable subject Deed of Trust.

## FIFTH CAUSE OF ACTION

Plaintiffs re-allege and incorporate by reference in this Cause of Action each allegation set forth in paragraphs 1 though 50 above. Plaintiffs were enticed into an unconscionable Loan agreement including a Note and Deed of Trust with cognovit clauses and intentions through predatory loan practices, violations of lending laws and fraud from which the Defendant has or intends to benefit; and, the Plaintiffs are therefor damaged by the Defendant's acts; accordingly, Plaintiffs pray for a judgment declaring the subject Note as void for fraud and unenforceable.

## SIXTH CAUSE OF ACTION

Plaintiffs re-allege and incorporate by reference in this Cause of Action each allegation set forth in paragraphs 1 though 50 above. A fraudulent, failed, invalid Appointment of Successor Trustee was recorded against the Plaintiff's subject property from which the Defendant has or intends to benefit; and, the Plaintiffs are therefor damaged by the Defendant's acts; accordingly, Plaintiffs pray for a judgment invalidating all the acts of the Successor Trustee in relation to the subject property and removing them from the public record..

## SEVENTH CAUSE OF ACTION

Plaintiffs re-allege and incorporate by reference in this Cause of Action each allegation set forth in paragraphs 1 though 50 above. Plaintiff's Qualified Written Request was never answered and therefore estops foreclosure proceedings; the period for timely compliance is well past; accordingly, the Plaintiffs pray for a judgment invaliding all foreclosure actions

VERIFIED COMPLAINT
FOR QUIET TITLE

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

performed to date as well as a permanent injunction of any future foreclosure proceeding by the Defendant.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for judgment against the Defendant, as to all causes of action, as follows:

1. For an order quieting title in favor of the Plaintiffs.

2. For an order rescinding any Trustee's Deed (if any) in connection with the alleged mortgage Loan and any other document signed or entered into by the Plaintiffs in connection with the mortgage loan.

3. For an order rescinding, releasing and/or re-conveyance of any Deed of Trust or other document signed or entered into and subsequently recorded in connection with the mortgage Loan by the Plaintiffs.

4. For permanent injunction against the Defendant, its assignees, subsidiaries, affiliates, successors, agents, servants, officers, directors, employees, and all persons acting in concert with them, directly or indirectly, from engaging in the improper, unlawful, unfair, fraudulent and/or deceptive conduct as described above and according to proof.

5. For Plaintiff's reasonable fees and costs necessary to obtain relief.

6. For such forfeitures, other and further relief as this Court deems just and proper.

Respectfully submitted this ___ day of **December, 2010.**

/ / /

VERIFIED COMPLAINT
FOR QUIET TITLE

Page  19 of 21

**Daisy D. Fidel, Plaintiff**
**25311 150th Pl SE**
**Covington, WA 98042**

1
2
3

# VERIFICATION

4  I/We, the under signed Plaintiffs, do affirm the foregoing Verified Complaint for Quiet Title, the
5
   allegations therein, the pleading and contents to be true, correct, complete, to the best of my
6
7  knowledge, information and belief.

8                                          FOR: DAISY D. FIDEL, PLAINTIFF

9                                          BY: _____

10                                         FOR: CORAZON A. DIVINA, PLAINTIFF

11                                         BY: Corazon Divina POA

12                                              JURAT

13  I _Barbara L Danberg_ a Notary Public certify that I know or have satisfactory

14  evidence DAISY D. FIDEL AND CORAZON A. DIVINA appeared before me, and signed this

15  instrument and acknowledged it to be a free and voluntary act for the uses and purposes

16  mentioned in the instrument.

17  I certify under PENALTY OF PERJURY under the laws of the State of Washington, County of

18  _Pierce_ that the foregoing paragraph is true and correct.

19

20  _12/30/2010_
    DATED:
21
    X_Barbara J Danberg_
22  Notary Public

23  My appointment expires _10-19-12_

24
25
26

1
2
3

# ATTACHED EXHIBITS

4
5

6   **1.  Exhibit "A"   UCC Search Report, Search Number 2010-364-5991-0S**

7   **2.  Exhibit "B"   Common Law Lien / UCC Filing (20101019000389)**

8   **3.  Exhibit "C"   Securitization Audit Report and Affidavit**

9   **4.  Exhibit "D"   Forensic Audit Report and Affidavit**

10
    **5.  Exhibit "E"   Assignment of Deed of Trust (20090603001628)**
11
    **6.  Exhibit "F"   STATUTORY WARRANTY DEED (20051110002194)**
12
13  **7.  Exhibit "G"   Appointment of Successor Trustee (20090603001629)**

14
15
16
17
18
19
20
21
22
23
24
25
26

VERIFIED COMPLAINT                                    **Daisy D. Fidel, Plaintiff**
FOR QUIET TITLE                                              **25311 150th Pl SE**
                                                       **Covington, WA 98042**

# EXHIBIT "A" ATTACHED

# (HEREUNDER)

### Washington State Department of Licensing
### Uniform Commercial Code
### Debtor Information Search Report

**Search number:**          2010-364-5991-0S

**Name as provided:**

Individual Name:          Fidel, Daisy (Debtor)

**Name searched:**

Individual Name:          FIDELDAISY

**Lien type searched:**     All
**Lien status searched:**   Unlapsed
**Search limited by:**
**Search logic used:**      Standard

**Report:**                 12/30/2010 10:30:01 AM
**Through date:**           12/28/2010

**Certification:**
The filing office certifies that the attached list is a true and exact representation
of all financing statements and non-UCC liens for the name searched, as filed with
the Department of Licensing, Uniform Commercial Code Program, as of the through
date shown above. But a limited search may not reveal all records of the name
searched and the searcher bears the risk of relying on such a search.

*Elizabeth A. Luce*

Elizabeth Luce, Director, Department of Licensing

As of the Certified Through Date no records that match the search request shown above were  on file in the Department of Licensing.

2010-364-5991-08

# EXHIBIT "B" ATTACHED

# (HEREUNDER)



**Recorders Office**
King County, Washington

HOME   NEWS   SERVICES   DIRECTORY   CONTACT

[ ] **Search**

Records Search

# *Official Public Records*
## *Document Detail*          **Menu**  ·  **New Search**  ·  **Search Results**  ·  **Help**

### Document Detail

**Instrument Number:** 20101019000389
**Sequence #:** 0
**Date Received:** 10/19/2010 11:12:52 AM
**Document Type:** UCC FILING
**Book:** 000
**Page:** 000
**Image:** Not scanned or not available online

### Grantors

FIDEL, DAISY D
EQUITAS SOLUTIONS INC

### Grantees

NORTHWEST TRUSTEE SERVICES INC
DEUTSCHE BANK NATIONAL TRUST CO

### Legal Records

| # | Plat | Lot/Unit | Block/Building | Section | Township | Range | Q1 | Q2 | Tax Parcel | Freeform |
|---|------|----------|----------------|---------|----------|-------|----|----|-----------|----------|
| 1 | MERIDIAN TRACE | | | | | | | | 5469300310 | |

### Related Documents

None found

Recorders Office Home Page | Customer Service Questions

Home | Privacy | Accessibility | Terms of use | Search

Links to external sites do not constitute endorsements by King County.
By visiting this and other King County web pages,
you expressly agree to be bound by terms and conditions of the site.

Internet Public Access Module Version 3.1
Copyright © 2001 - 2003 Hart InterCivic, Inc. All Rights Reserved.

WebServ3

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

EQUITAS SOLUTIONS INC.

EQUITAS SOLUTIONS INC.

PO BOX 99700

LAKEWOOD WA 98496

Date of Filing : 10/14/2010
Time of Filing : 08:59:00 PM
File Number : 2010-287-3264-9
Lapse Date : 10/14/2015

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| LONG BEACH MORTGAGE COMPANY | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1400 S. DOUGLASS RD., STE. 100 | ANAHEIM | CA | 92806 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | MORTGAGE | UNITED STATES | NONE ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| NORTHWEST TRUSTEE SERVICES, INC. | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. BOX 997 | BELLEVUE | WA | 98009 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | TRUSTEE | UNITED STATES | NONE ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| Daisy D. Fidel | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 25311 150th Pl SE | Covington | WA | 98042 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

First a Common Law Claim of Sweat Equity for the Amount of $2,260,138.32 with an effective date retroactive to the date of Real Estate acquisition 11/03/2005. This Claim of Sweat Equity made a part of and attached as an exhibit.

Second a Common Law Lien in the nature of a Mechanics Lien for Services in the amount of $25,000.00 for the performance of a Private Commercial Contract in the favor of EQUITAS SOLUTIONS, INC. This is a suit or action at Common Law and the value in controversy exceeds twenty (20) dollars. The controversy is not confined to the question of Title to Property or in

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

Secured Parties are sovereign and operating in Common Law and without the United States also in Common Law

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

2010-287-3264-9

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME

OR **LONG BEACH MORTGAGE COMPANY**

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX

**Date of Filing : 10/14/2010**
**Time of Filing : 08:59:00 PM**
**File Number    : 2010-287-3264-9**
**Lapse Date    : 10/14/2015**

**10. MISCELLANEOUS:**
This Common Law Lien cannot be discharged only by Claimant, or by a Common Law Jury in a Court of Common Law and according to the rules of Common Law. It cannot be
discharged for One Hundred (100) years, and cannot be extinguished due to the death of Claimant, or by Claimant's heirs, assigns, or executors. This Common Law Lien is for repairs/maintenance and improvements related to said Claimant, and performance of duty as related to all other assets due and payable in lawful money of the unite

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only <u>one</u> name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

11d. <u>SEE INSTRUCTIONS</u> | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | ☐ NONE

**12. ☒ ADDITIONAL SECURED PARTY'S** or ☐ **ASSIGNOR S/P'S NAME** - insert only <u>one</u> name (12a or 12b)

12a. ORGANIZATION'S NAME

OR **EQUITAS SOLUTIONS, INC.**

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| PO BOX 99700 | LAKEWOOD | WA | 98496 | USA |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**16.** Additional collateral description:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check <u>only</u> if applicable and check <u>only</u> one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check <u>only</u> if applicable and check <u>only</u> one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

2010-287-3264-9

Continuation of section 4 collateral

4. This FINANCING STATEMENT covers the following collateral:

relation to other property, but to Claimant's Common Law Claim for the acquisition, finance, repair, maintenance and improvements to the herein described property, and obligations of duties, wherein the Claimant demands that said controversy be determined by a Common Law Jury in a Court of Common Law and according to the Rules of Common Law. Common Law Liens supersede ALL Liens, including, but not Limited to, Mortgage Liens,Statutory Liens, and Lis Pendens Liens. LOT 31, MERIDIAN TRACE, VOL. 92, PG. 92. PARCEL # 546930-0310 AKA 25311 150th Pl SE Covington, WA 98042 Promissory note on account number #6613444-7881, in the amount of $204,000.00, dated 11/03/2005 and all funds generated there from.

**2010-287-3264-9, Attachment 1 of 16**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Linda Stephenson 253-227-9029

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

EQUITAS SOLUTIONS INC.
PO BOX 99700
LAKEWOOD, WA 98496

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| LONG BEACH MORTGAGE COMPANY | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1400 S. DOUGLASS RD., STE. 100 | ANAHEIM | CA | 92806 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | MORTGAGE | UNITED STATES | NONE ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| NORTHWEST TRUSTEE SERVICES, INC. | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. BOX 997 | BELLEVUE | WA | 98009-0997 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | TRUSTEE | UNITED STATES | NONE ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Daisy D. Fidel | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 25311 150th Pl SE | Covington | Wa | 98042 | usa |

**4. This FINANCING STATEMENT covers the following collateral:**

First a Common Law Claim of Sweat Equity for the Amount of $2,260,138.32 with an effective date retroactive to the date of Real Estate acquisition 11/03/2005. This Claim of Sweat Equity made a part of and attached as an exhibit.

Second a Common Law Lien in the nature of a Mechanics Lien for Services in the amount of $25,000.00 for the performance of a Private Commercial Contract in the favor of EQUITAS SOLUTIONS, INC. This is a suit or action at Common Law and the value in controversy exceeds twenty (20) dollars. The controversy is not confined to the question of Title to Property or in relation to other property, but to Claimant's Common Law Claim for the acquisition, finance, repair, maintenance and improvements to the herein described property, and obligations of duties, wherein the Claimant demands that said controversy be determined by a Common Law Jury in a Court of Common Law and according to the Rules of Common Law. Common Law Liens supersede ALL Liens, including, but not Limited to, Mortgage Liens, Statutory Liens, and Lis Pendens Liens. LOT 31, MERIDIAN TRACE, VOL. 92, PG. 92. PARCEL # 546930-0310 AKA 25311 150th Pl SE Covington, WA 98042 Promissory note on account number #6613444-7881, in the amount of $204,000.00, dated 11/03/2005 and all funds generated there from.

| 5. ALTERNATIVE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

Secured Parties are sovereign and operating in Common Law and without the United States also in Common Law

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

International Association of Commercial Administrators (IACA)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| 9a. ORGANIZATION'S NAME |
|---|
| LONG BEACH MORTGAGE COMPANY |

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| | | |

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

| 11a. ORGANIZATION'S NAME |
|---|
| |

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| Not Applicable | | | | | □ NONE |

**12.** ☑ **ADDITIONAL SECURED PARTY'S** or □ **ASSIGNOR S/P'S** NAME - insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME |
|---|
| EQUITAS SOLUTIONS, INC. |

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| PO BOX 99700 | LAKEWOOD | WA | 98496 | USA |

**13.** This FINANCING STATEMENT covers □ timber to be cut or □ as-extracted collateral, or is filed as a □ fixture filing.

**14.** Description of real estate:

LOT 31, MERIDIAN TRACE, VOL. 92, PG. 92.

PARCEL # 546930-0310

Commonly known as:
25311 150th Pl SE
Covington, WA 98042

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

Daisy D. Fidel
25311 150th Pl SE
Covington, WA 98042

**16.** Additional collateral description:

This Common Law Lien cannot be discharged only by Claimant, or by a Common Law Jury in a Court of Common Law and according to the rules of Common Law. It cannot be discharged for One Hundred (100) years, and cannot be extinguished due to the death of Claimant, or by Claimant's heirs, assigns, or executors. This Common Law Lien is for repairs/maintenance and improvements related to said Claimant, and performance of duty as related to all other assets due and payable in lawful money of the united States, a DOLLAR being described in the 1792 US Coinage Acts as 371.25 grains of fine silver, or the equivalent of Gold, notes or other instruments acceptable to Claimant.

**17.** Check only if applicable and check only one box.

Debtor is a □ Trust or □ Trustee acting with respect to property held in trust or □ Decedent's Estate

**18.** Check only if applicable and check only one box.

□ Debtor is a TRANSMITTING UTILITY
□ Filed in connection with a Manufactured-Home Transaction — effective 30 years
□ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

**2010-287-3264-9, Attachment 3 of 16**

Daisy D. Fidel
25311 150th Pl SE
Covington, WA 98042
    **Secured Party, Claimant**

**NORTHWEST TRUSTEE SERVICES, INC.**
P.O. BOX 997
BELLEVUE, WA. 98009-0997
**LONG BEACH MORTGAGE COMPANY**
1400 S. DOUGLASS RD., STE. 100
ANAHEIM, CA. 92806
    **Debtor (s)**

# CLAIM OF SWEAT EQUITY LIEN
## [Mechanics Lien]

Name of Claimant:
**Daisy D. Fidel**

Property address where investment of sweat equity was made:
25311 150th Pl SE
Covington, WA 98042

Assessor's Parcel Number:
**546930-0310**

Legal Description:
LOT 31, MERIDIAN TRACE, VOL. 92, PG. 92

This claim covers the Total Owners Equity together with interest thereon at the rate of 10% annually from 11/03/2005 is due claimant after deducting all just credits and offsets for the following investment and sweat equity was furnished by claimant:

| | |
|---|---|
| First Mortgage in the amount of: | $204,000.00 |
| Second Mortgage in the amount of: | $51,000.00 |
| Finance Charge Principal & interests | $401,252.28 |
| Principal & Interest made to date. | $97,127.16 |
| Sub Total | $753,379.44 |
| Damages (total paid x 3) | $2,260,138.32 |

Claimant furnished the Promissory note and payments at the instruction/demand of:

**LONG BEACH MORTGAGE COMPANY**

The undersigned being the claimant of the foregoing Sweat equity Claim of Mechanics' Lien. Having read said Claim of Lien and knowing the contents thereof. I declare under penalty of perjury that the foregoing is true and correct. Name of Owner of the Funds provided: Daisy D. Fidel.

_____
Daisy D. Fidel

# VERIFICATION

Executed on ___10/7/10___

STATE OF ___Washington___

COUNTY OF ___King___

I ___DJ Wilson___ a Notary Public certify that I know or have satisfactory evidence that Daisy D. Fidel appeared before me, and signed this instrument and acknowledged it to be free and voluntary act for the uses and purposes mentioned in the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Washington that the foregoing paragraph is truc and correct.

___10/7/10___
DATED:

_____
Notary Public

My appointment expires ___7/10/12___

SEAL

DJ WILSON
COMMISSION EXPIRES
NOTARY
---
PUBLIC
JULY 10, 2012
STATE OF WASHINGTON

When recorded return to
**Daisy D. Fidel**
**25311 150th Pl SE**
**Covington, WA 98042**

# Notice of Common Law Lien

Daisy D. Fidel
EQUITAS SOLUTIONS, INC.
   Secured Parties / Claimants
vs

LONG BEACH MORTGAGE COMPANY and/or assigns, successors, servicers,
Trustees and the true Holder-in-Due-Course.
   "alleged lender" / debtors

Notice is hereby given that the listed below claim a Common Law Lien is pursuant to local state
statutes and the Common Law of England reflected therein. In support of this Common Law Lien
the following is submitted:

1. Names: Daisy D. Fidel
   Address: 25311 150th Pl SE Covington, WA 98042

   Name: EQUITAS SOLUTIONS, INC.
   Address: PO BOX 99700 LAKEWOOD, WA 98496

2. Date: Retroactive to Date of Real Estate Purchase 11/03/2005
   Date (EQUITAS SOLUTIONS, INC.) Effective signing of Private Agreement 10-6-2010.

3. Debtor: LONG BEACH MORTGAGE COMPANY and/or assigns, successors, servicers,
   trustees and the true Holder-in-Due-Course. This Common Law Lien arises from the FRAUD
   of the "alleged lender" non-disclosure and criminal acts relating to the separation and leverage
   of Secured Parties promissory note.

4. Property: LOT 31, MERIDIAN TRACE, VOL. 92, PG. 92

5. Owner(s): Daisy D. Fidel

6. Promissory note on account number #6613444-7881, in the amount of $204,000.00, dated
   11/03/2005 and all funds generated there from.

7. Any and All Title Insurance Policies on account # 6613444-7881 on parcel number 546930-0310.

8. The above (#5) listed owners have at all time continued to invest their Sweat in the payment, repair, and maintenance of the property stated above (#4).

9. Claim Amount: Common Law Claim of Sweat Equity for: $2,285,138.32 to include the Private contract with EQUITAS SOLUTIONS, INC. which is not included here.

## Notice of Common Law Lien Signatures

Daisy D. Fidel

## VERIFICATION

Executed on ___10/7/10___

STATE OF ___Washington___

COUNTY OF ___King___

I ___DJWilson___ a Notary Public certify that I know or have satisfactory evidence that Daisy D. Fidel appeared before me, and signed this instrument and acknowledged it to be free and voluntary act for the uses and purposes mentioned in the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Washington that the foregoing paragraph is true and correct.

___10/7/10___
DATED:

Notary Public

My appointment expires ___7/10/12___

SEAL DJ WILSON
COMMISSION EXPIRES
NOTARY
PUBLIC
JULY 10, 2012
STATE OF WASHINGTON

Additional documents made apart and attached hereto:

CLAIM OF SWEAT EQUITY

PRIVATE PROPERTY CLAIMS

COMMON LAW MEMORANDUM

# PRIVATE PROPERTY CLAIMS

This claim shall operate in the nature of a "security" for the finance, repair, maintenance, improvements of the herein described property, performance of obligations related to property of all kinds.  This claim is made pursuant to decisions of the United States Supreme Court.

This Common Law Lien cannot be discharged only by Claimant, or by a Common Law Jury in a Court of Common Law and according to the rules of Common Law.  It cannot be discharged for One Hundred (100) years, and cannot be extinguished due to the death of Claimant, or by Claimant's heirs, assigns, or executors.  This Common Law Lien is for repairs/maintenance and improvements related to said Claimant, and performance of duty as related to all other assets due and payable in lawful money of the united States, a DOLLAR being described in the 1792 US Coinage Acts as 371.25 grains of fine silver, or the equivalent of Gold, notes or other instruments acceptable to Claimant.

The failure, refusal, or neglect of Respondent(s) to demand, by all prudent means, that the Sheriff of this County convene a Common Law Jury to hear this action within thirty (30) days from the date of filing of this Instrument will be deemed as prima facia evidence of an admission of "waiver" to all rights on the property described herein.

**Common Law Lien definition:**  One known to or granted by the common law, as distinguished from statutory, equitable, and maritime liens; also one arising by implication of law, as distinguished from one created by the agreement of the parties.  It is a right extended to a person to retain that which is in his possession belonging to another, until the demand or charge of the person in possession is paid or satisfied.

**11 USCS ( 1 ) 101,** Paragraph ( 28 ) defines "lien".  The definition is new and is very broad. A lien is defined as a charge against or interest in property to secure payment of debt or performance of an obligation.  It includes inchoate lien.  In general, the concept of lien is divided into three (3) kinds of liens: judicial liens, security interests, and statutory liens.  These three (3) categories are mutually exclusive and are exhaustive except for certain Common Law Liens.

This Common Law Lien supersedes Mortgage Liens, Lis Pendens Liens, and Liens of any other kind.

This is a suit or action at Common Law and the value in controversy exceeds twenty (20) dollars.  The controversy is not confined to the question of Title to Property or in relation to other property, but to Claimant's Common Law Claim for the repair/maintenance and improvements to the herein described property, and obligations of duties, wherein the Claimant demands that said controversy be determined by a Common Law Jury in a Court of Common Law and according to the Rules of Common Law.

**A UCC-1 Financial Statement and UCCAD Addendum relating to these obligations and the Real and Private Property filed with Office of The Secretary of State UCC Division.**

# MEMORANDUM OF LAW

This Claim through Common Law is an action at Substantive Common Law, not in Equity, and is for the financing, repair, maintenance, improvement or performance of an obligation of the herein described property and in relation to other properties as of Substantive Common Law, is distinguished from mere, "common law procedure".   Lawyers and judges are misinformed to think, plead, rule or order that the substantive common law rights and immunities have been abolished in any of the American states.   Only "Common Law procedure" created by the chancel or/chancery has been abolished.   That is to say, the "forms" of common law and equity were abolished, (Kimball v. McIntyre, 3 U 77, 1 P 167), or that the distinctions between the forms of common law and equity were abolished by Rule 2 of Civil Procedure (Donis v. Utah R.R., 3 U 218, 223 P 521).

However, the abolition of mere form, does NOT affect nor diminish our SUBSTANTIVE Common Law and Constitutional Rights and immunities (USC 78-2-4,S.2) for substantive law, e.g. our UNALIENABLE Rights Immunities, and has not changed with the state's adoption of Rule 2, combining the courts form, remedial, ancillary adjective procedures, (see Bonding v. Nonatny, 200 Iowa, 227,202 N.W.588) for matters of substance are in the main the same as at substantive Common Law, (Calif. Land v. Halloran, 82U 267,17 P2d 209) and old terms (words and phrases describing law and substantive procedures) used in Common Law can NOT be ignored (O'Neill v. San Pedro RR, 38 U 475, 479, 114 P 127), the modifications resulting being severely limited in operation, extent (Maxfield v. West 6 U 379,- 24 P 98) for a total abolishment of even the purely equity or purely Common Law forms has NOT been realized, and must ever be kept in mind (Donis v. Utah RR, supra.) Thus a right to establish a "Common Law Lien" is not, and was NOT dependent upon a statute or chancery rule for its creation as a remedy, and where the right to establish a "Common Law Lien" is a part of SUBSTANTIVE Common Law our right is antecedent to creation of the "state" or its chancery/procedure which right runs to time immemorial (Western Union v. Call, 21 SCt 561,181 US 765)

I must be sustained in our acts, mere chancery, and equity having no jurisdiction so to counter:

For "although lawyers and judges have (in their ignorance) buried the Common Law, the Common Law rules us from the grave."

(Koffer, Common Law Pleading, Intro.Ch.I, West 1969)

The general rule of the Common Law is expressly adopted by all states and is in force and is the Law of the Land and by its operation can impose a Common Law Lien on property in the absence of any specific agreement (see the law express and implied in the class of cases represented by Drumond v. Mills,(1898) 74 N.W.966; Hewitt v. Williams, 47 LaAnn 742, 17 So.269 (1894); Carr v. Dail, 19 S.E.235; McMahon v. Lundin, 58 N.W.827)

The Magna Carta governs as well, retaining and preserving all rights antecedent thereto, which was restated in the (1) Massachusetts Bay Charter. (2) Massachusetts Constitution, and (3) the Federal Constitution, (modeled after the Massachusetts Constitution) after which the Texas and Arizona Constitution is modeled, all construed in pari materia, the State Constitution being a

LIMITATION on the state's power (Fox v. Kroeger, 11 9 Tex 511, 35 SW2d 670,77 ALR 663.), the Constitution acting prospectively declaring rights and procedures for the future but NOT diminishing rights extant prior to establishment of the state (Grigsby v. Reib, 105 Tex 597, 153 SW 1124; Southern Pacific Co. v. Porter, 160 Tex 329,331 SW2d 42), and no new powers contrary to our Common Law Rights/Immunities were "granted" to the state.

Common Law Liens at Law supersede mortgages and equity Liens (Drumons Carriage Co. v Mills (1898) 74 NW 966; Hewitt v. Williams 47 LaAnn, 742, 17 So.269; Carr v. Dail,19SE235; McMahon v. Lundin, "58NW 827) and may be satisfied only when a Court of Common Law is convened pursuant to an order of the elected sheriff.  Such Common Law Court forbids the presence of any judge or lawyer from participating or presiding, or the practice of any Equity Law.

The ruling of the U.S. Supreme Court in Rich v. Braxton, 158 US 375, specifically forbids judges from invoking equity jurisdiction to remove Common Law Liens or similar "clouds of title".   Further, even if a preponderance of evidence displays the lien to be void or void-able, the Equity Court still may not proceed until the moving party has proven that he asks for, and has come "to equity" with "clean hands". (Trice v. Comstock, 570C. A646; West v. Washburn, 138NY Supp.230).

Any official who attempts to modify or remove this Common Law Lien is fully liable for damages. (U.S. Supreme Court; Butz v. Economou, 98 S.Ct.2894; Bell v. Hood, 327 US 678; Belknap v. Schild, 161 US 10; US v. Lee; Bivens v. 6 Unknown Agents, 400 US 862)

Demand is hereby and herewith made upon all public officials under penalty of Title 42, united States Code, and Section 1986, not to modify or remove this Lien in any manner. (This Lien is not dischargeable for 100 years and cannot be extinguished due to Claimant's death or by Claimant's heirs, assigns, or executors.)  Any Order, Adjudgment, or Decree issuing from a Court of Equity operating against to interfere or remove this At-Law legal lien claim would constitute direct abrogation or deprivation of Claimant's local State and United States Constitutionally guaranteed Rights.

This notice is given inter alia to preclude a jury trial on the certain claim, and to provide for Summary Judgment on the said certain Claim should Claimant admit "waiver" and refuse to call said court.

THIS SAID CLAIM DUE AT LAW IS: For the performance of a Private agreement number for stated purpose outlined therein. Said agreement is solely between the people having given their mark to that agreement and not subject to scrutiny from ANY person or juristic entity of the Public for ANY reason. That agreement for the repair, maintenance, improvement of the herein described property, and performance obligation.   The symbol "$" means "dollar" as defined by the unrepealed (1792) U.S. Coinage Act, which is 371.25 grains of fine silver for each "dollar", (or) the equivalent in currency acceptable to claimant) and is that "Thing" mandated upon all of the states by Article 1:10:1, united States Constitution.

This demand and reservation of all state and Federal Common Law Rights at all times and in all places along with those rights guaranteed in the Magna Carta, Declaration of Independence, United States Constitution, and the local State Constitution.

# Local State Code / Regulations
# Washington

**RCW 4.04.010**
Extent to which common law prevails.

The common law, so far as it is not inconsistent with the Constitution and laws of the United States, or of the state of Washington nor incompatible with the institutions and condition of society in this state, shall be the rule of decision in all the courts of this state.

[1891 c 17 § 1; Code 1881 § 1; 1877 p 3 § 1; 1862 p 83 § 1; RRS § 143. Formerly RCW 1.12.030.]

**RCW 60.04.061**
Priority of lien.

The claim of lien created by this chapter upon any lot or parcel of land shall be prior to any lien, mortgage, deed of trust, or other encumbrance which attached to the land after or was unrecorded at the time of commencement of labor or professional services or first delivery of materials or equipment by the lien claimant.

**RCW 60.04.051**
Property subject to lien.

The lot, tract, or parcel of land which is improved is subject to a lien to the extent of the interest of the owner at whose instance, directly or through a common law or construction agent the labor, professional services, equipment, or materials were furnished, as the court deems appropriate for satisfaction of the lien. If, for any reason, the title or interest in the land upon which the improvement is situated cannot be subjected to the lien, the court in order to satisfy the lien may order the sale and removal of the improvement from the land which is subject to the lien.

# Revocation of Power of Attorney

In all matters of:
**Daisy D. Fidel**
25311 150th Pl SE
Covington, WA 98042

## Notice And Declaration of Retroactive
## <u>Revocation of Power of Attorney</u>

### Notice and Declaration of Fraud
### Notice to Cease and Desist

This Notice and Declaration to Amend and Supersede all Existing Records
Maintained with regard to The Grantor Beneficiary as Trustor/Settlor

**In and for the public record,**
**KNOW ALL MEN BY THESE PRESENTS;**

That I, Daisy D. Fidel hereinafter known as 'Authorized Representatives", do hereby declare and revoke and rescind any and ALL signatures and endorsements in fact or otherwise, adhesion and or unconscionable contracts signed by us, our agent(s), parents, parens patriae, implied in law, or by trust, voluntary or involuntary, with or without Authorized Representatives's informed consent and knowledge, by, for, and with, these sole and aggregate corporations, companies, agencies and agents, representatives and employees, and all their associations, instrumentality, and assigns and every derivation of same thereof, and by which the undersigned Authorized Representatives's constituted attorney for the purpose set forth in said power of attorney through all contracts with the fictions, corporations and derivations and revoke ALL power of attorneys, implied jurisdiction or other control that any corporations, financial institutions, United States presumes was granted by way of contract and I are revoking our signatures thereon,

**I HEREBY DECLARE ON AND FOR THE RECORD THAT I ARE NOT RESIDENTS OF ANY FEDERAL JUDICIAL DISTRICT, OR CENTRAL DISTRICT OF THE UNITED STATES, STATE OF WASHINGTON, ANY OTHER STATE CREATED ENTITY.**
**I DECLINE ANY AND ALL OFFERS TO CONTRACT AND RESERVE ALL RIGHTS.**
**I HEREBY RECIND, WAIVE AND REJECT ALL BIDS AND DO NOT CONCEDE TO ANY PRESUMPTIONS.**
**I DO NOT CONSENT TO ANY AUTHORITY OR PROCEEDINGS THAT MAY BE ADVERSE TO OUR BENEFIT AND INTEREST AND DEMAND THE**
**RATIFICATION OF COMMENCEMENT ON ALL ISSUES.**

| LONG BEACH MORTGAGE COMPANY | NORTHWEST TRUSTEE SERVICES, INC. |
|---|---|

| 1400 S. DOUGLASS RD., STE. 100 | P.O. BOX 997 |
| ANAHEIM CA 92806 | BELLEVUE WA 98009-0997 |

The Grantors/Beneficiaries as Trustors/Settlors **do hereby notice and declare:**

1. This Revocation Of Power Of Attorney does include, and not excluding any issues or contracts not mentioned herein and encompass all and any warrant, bill, contract, financial obligation, order, security or other negotiable instrument or action against Authorized Representatives and for any cause, contract or matter and from anyone other than Authorized Representatives and signed by any man or woman or agent or signed for any man or woman or agent other than Authorized Representatives where said **NOTICE AND DECLARATION OF REVOCATION OF POWER OF ATTORNEY** is made public and into this matter and for all matters and cause related to Authorized Representatives is/are noticed as fraudulent and criminal and is extinguished, canceled and made null and void and by this **NOTICE AND DECLARATION OF FRAUD** and wholly revoked, extinguished, cancelled, made null and void and as declared and signed on date by Authorized Representatives, in the sight and service of Authorized Representatives's Creator in Heaven above;

2. Where all subsequent attempts to contract Authorized Representatives without consideration of Authorized Representatives's right to refuse to contract, is without full disclosure signed stated and sworn by affidavit under penalty of perjury nor just compensation and where any copy of alleged "WARRANT" or "ORDER" or "INVOICE" or "BILL" or "STATEMENT" or "DEBT" and mailed to Authorized Representatives is evidence of fraud. All said copy assumes facts which are not in evidence in the official record and in this, or any, matter to include any bond or negotiable instrument created as a result of any adhesion contract from any power of attorney with Authorized Representatives and for the profit of anyone other than Authorized Representatives and without compensation to Authorized Representatives, nor full disclosure of said profit;

3. That these said and named sole and aggregate corporations, agents and agencies and subsidiaries and employees and all derivatives of said names, thereof, are noticed specifically of this **NOTICE AND DECLARATION OF FRAUD** and by actions and by public notice of fraudulent obligation;

4. That any attempts by any man or woman or agents thereof, to transmit fraudulent documents to Authorized Representatives via U.S. Mail, or by any other means, will be treated as proof of predicate acts to racketeering and conspiracy to engage in a pattern of racketeering activity, in violation of the federal RICO laws at 18 U.S.C. 1961 et seq. ("RICO" is the accepted legal acronym for the Racketeer-Influenced and Corrupt Organizations Act.) Mail fraud is a RICO predicate act. See 18 U.S.C. 1961(1)(B).

IT IS FURTHER DECLARED that private power of attorney agreement(s) granted to attorney-in-fact(s), and from Authorized Representatives, is notice publicly that dishonor of this **NOTICE AND DECLARATION OF REVOCATION OF POWER OF ATTORNEY** and by force, duress, or any other fraudulent act in the coercion to contract Authorized Representatives to any foreign jurisdiction and agents thereof, and without warrant or other negotiable instrument issued by any corporate representative acting in judgment of Authorized Representatives and

without Authorized Representatives's consent to agree to the conspiracy of, or the engagement of, any act to kidnap, extort, racketeer, and require subservience of Authorized Representatives by color of law resulting in the loss of freedom and the substance of Authorization Representative(s), is subject to affidavit of criminal complaint filed publicly and served by Article III court declaration and immediately and against any said perpetrator(s) engaging said acts with the intent to harm Authorized Representatives.

WHEREFORE, this **NOTICE AND DECLARATION OF REVOCATION OF POWER OF ATTORNEY** and **NOTICE AND DECLARATION OF FRAUD AND NOTICE TO CEASE AND DESIST** declares Authorized Representatives's right to refuse to contract and declares Authorized Representatives's refusal of contract for, in and of, this cause and by this

**NOTICE AND DECLARATION OF REVOCATION OF POWER OF ATTORNEY AND NOTICE** and **DECLARATION OF FRAUD AND NOTICE TO CEASE AND DESIST** and with all reservation of rights.

THEREFORE, Authorized Representatives declare this **NOTICE TO CEASE AND DESIST** by reservation of all rights and by Authorized Representatives signatures of this declaration and by **NOTICE AND DECLARATION OF REVOCATION OF POWER OF ATTORNEY** made public in said cause and of any public notice of fraudulent obligation, attempt, force, harassment, conspiracy, and by any means to include mail or personal appearance and by any agent or representative acting in collusion and by conspiracy, and without loss of personal quality of life or interruption of any contracted service or standard conducive to any comfort of living of Authorized Representatives or Authorized Representatives's heir and assigns as is afforded to said corporations taking comfort in provisions from fraudulent contracts by Authorized Representatives's signature and without Authorized Representative's benefit, and on behalf of said corporations or by said corporations or by any subsidiary, agent, employee or representative of any and or all corporations acting in any statutory or corporate administrative capacity, thereof, and considered liable in both a corporate and personal capacity, to engage Authorized Representatives in any contract, cause or matter by the voiding of consent of Authorized Representatives forevermore.

# Revocation of Power of Attorney

*Daisy D. Fidel    Signing in his/her private commercial capacity, free on the land without the United States.*

_____
Daisy D. Fidel
Grantor Beneficiary as Trustor/Settler
DAISY D. FIDEL

## VERIFICATION

Executed on  __10/7/10__

STATE OF  __Washington__

COUNTY OF  __King__

I  __DJWilson__  a Notary Public certify that I know or have satisfactory evidence that Daisy D. Fidel appeared before me, and signed this instrument and acknowledged it to be free and voluntary act for the uses and purposes mentioned in the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Washington that the foregoing paragraph is true and correct.

__10/7/10__
DATED:

_____
Notary Public

My appointment expires  __7/10/12__

SEAL

DJ WILSON
COMMISSION EXPIRES
NOTARY
PUBLIC
JULY 10, 2012
STATE OF WASHINGTON

When recorded return to:
Daisy D. Fidel
25311 150th Pl SE
Covington, WA 98042

# MODIFICATION OF DEED OF TRUST RIDER

This agreement, made this ___Oct. 9___, 2010 by and between Daisy D. Fidel, hereinafter called Trustor and LONG BEACH MORTGAGE COMPANY, hereinafter called Beneficiary WITNESSETH: THAT WHEREAS, on the 11/03/2005 Trustor did make, execute and deliver to CHICAGO TITLE INSURANCE COMPANY as Trustee, that certain deed of trust recorded 11/03/2005 as instrument No. 20051110002197, in the Official Records, in the Office of the Recorder of King County, State of Washington, securing a promissory note for $204,000.00, in favor of Beneficiary and covering the following described property:

LOT 31, MERIDIAN TRACE, VOL. 92, PG. 92

   additional detail attach hereto as Exhibit A as needed.

AND WHEREAS, said deed of trust, erroneously set forth the amount of indebtedness secured thereby as being $204,000.00 AND WHEREAS, the parties hereto desire to modify said deed of trust to correctly reflect the amount of indebtedness secured thereby to be zero dollars ($0.00)

NOW THEREFOR, for value received, the parties hereto desire to modify said deed of trust to provide that:

The Deed of Trust is to be modified to eliminate any further payments, to reflect a status of "paid as agreed" for the purpose of reporting to credit bureaus, negative reports to the credit bureaus are forbidden, "lender" owes a refund of all monies erroneously paid to date a full reconveyance is to be issued by trustee and if no full reconveyance is delivered within sixty days of the closing trustor reserves the right to revoke power of attorney and substitute a new trustee to record the full reconveyance, and an administrative fee of ten thousand dollars lawful specie gold or silver coin is due and payable immediately for each and every separate breech on "lender's" part.

# MODIFICATION OF DEED OF TRUST RIDER
## Signatures

Daisy D. Fidel

# VERIFICATION

Executed on ___10/7/10___

STATE OF ___Washington___

COUNTY OF ___King___

I ___DJWilson___ a Notary Public certify that I know or have satisfactory evidence that Daisy D. Fidel appeared before me, and signed this instrument and acknowledged it to be free and voluntary act for the uses and purposes mentioned in the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Washington that the foregoing paragraph is true and correct.

___10/7/10___
DATED:

___DJWilson___
Notary Public

My appointment expires ___7/10/12___

SEAL

DJ WILSON
COMMISSION EXPIRES
NOTARY
---
PUBLIC
JULY 10, 2012
STATE OF WASHINGTON

# EXHIBIT "C" ATTACHED

# (HEREUNDER)

| | |
|---|---|
| LONGBEACH MORTGAGE COMPANY ) | |
| JP MORGAN CHASE BANK ) | |
| Plaintiff ) | Case No |
| ) | AFFIDAVIT OF LAURA MATHEWS |
| ) | |
| Vs ) | |
| ) | |
| ) | |
| Defendant, ) | |
| DAISY D. FIDEL ) | |
| CORAZON A. DIVINE | |

I, Laura Mathews, of legal age and competent to testify, state as follows based on my own personal knowledge understanding and belief and make this Affidavit/ Declaration based on personal knowledge and state as follows under the penalties of perjury under the laws of the People of the state of Washington:

1. I Laura Mathews am a Certified Forensic Loan Auditor Certified with the National Association of Mortgage Underwriters.

2. I certify that on December 16, 2010 I completed a Securitization audit on the property located at 25311 150TH PL. SE. Covington, WA Loan # 1st 6613444 & 2nd 6613445.

3. Said Securitization Audit is listed in my report entitled Securitization Audit dated 12/16/2010.

4. Said Securitization Audit tracks the historical assignment into Mortgage Backed Asset Certificate Series.

5. The provided Notice of Trustee Sales refers to the subject property and to a Deed of Trust dated **11/03/2005**, recorded **11/10/2005** under Auditor's file No. **20051110002197**, records of **King** County, **Washington**. The Notice of Trustee Sale names Grantor **"Daisy D. Fidel and Corazon A. Devine" Deutsche Bank National Trust Company** as Trustee, for **Long Beach Mortgage Trust 2006-1.**

6. **Long Beach Mortgage Trust 2006-1** has a cut-off date of **February 01, 2006** after the subject loan's origination date of **November 03, 2005.** The entered information is indexed under the loan number **6613444** for both the first note and the second note.

7.   <u>1st & 2nd Loan information contained in the FWP dated: 1/24/2006</u>

```
6613444    696935949   COVINGTON               WA                  98042
33     SFR          1        11/10/2005   2/1/2006
6613444    1/1/2006   12/1/2035   12/1/2008   1/1/2006    204000
203851.61        7.6         7.6         7.6         13.6
6613444    4.99       80         100                 255,000.00
51000      0      PURCHASE            255000    1440.39
6613444  1440.39    360        360        358        OWNER-OCC         1
3/27 LIBOR            2        276    LBMC       Full
6613444    200,000,000,000          0        37          0
3      1         6       7881      N         X
6613444          2        24    11/3/2007    a1                  0
589        0         0         0     A54       AP
6613444    LBMC    20060201   203702.28   YES        Group I      N
YES      20060114  NO       LBMLT 2006-1  011706      AP
```

Made this _____16th_____ day of _December_ , _2010_ .


Laura Mathews

Certified Forensic Loan Auditor

PO Box 99700

Lakewood, WA 98496


## Notary Statement

State of Washington    }
                       }    ss
County of King         }

**BE IT REMEMBERED,** that on the _16th_ day of _December_ 2010, before me, the undersigned, a Notary Public in and for the state of Washington, personally appeared, Laura Mathews who proved to me to be the same individual who executed the within instrument, and, affirmed that she is personally fully aware of the contents and accuracy of the statements made therein, and affirms that the document is, to the very best of her knowledge, true and correct.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed My Official seal the day and year last above written.

Notary Public for _Washington_

Commission Expires on _7/10/12_

Page 3 of 3

Securitization Audit

RESEARCH MEMORANDUM
12/16/2010

Re:    DAISY FIDEL
       CORAZON A. DIVINA
       25311 150TH PLACE SE
       COVINGTON, WA  98042-5228

### 1st Trust Deed and Loan:

|   |   |
|---|---|
| Loan No.: | 6613444(7881) |
| Loan Amount: | $204,000 |
| Loan Type: | 3/27 ARM |
| Settlement Date: | 11/03/2005 |
| Maturity Date: | 12/1/2035 |

### 2nd Trust Deed and Loan:

|   |   |
|---|---|
| Loan No.: | 6613445(7881) |
| Loan Amount: | $51,000 |
| Loan Type: | Fixed 30 Years |
| Settlement Date: | 11/03/2005 |
| Maturity Date: | 12/01/2035 |

### 1st TD INVESTMENT VEHICLE(S):

# LONG BEACH MORTGAGE LOAN TRUST 2006-1

### PRELIMINARY STATEMENT

Research of the Report consisted of searching SEC filings for indicators that the subject loan was securitized in a public investment vehicle. Mortgage loan trusts or REMICs 1) created shortly after the subject loan's origination and 2) including loans with interest rates based on the same index are candidate investment vehicles. This Report names the most likely one or two candidate vehicles. A loan may be included in a privately held investment vehicle. In particular, if the reported vehicle has been de-registered (with a Form 15-15D filing) it may still exist as a privately held vehicle. Private entities generally do not submit SEC filings so are not captured by this research.

1

## FACTS AND DISCUSSION

| Mortgage Broker | Mortgage Servicer | Mortgage Nominee/Beneficiary |
|---|---|---|
| **Pacific Northwest Mortgage Inc.**<br>**15410 Ambaum Blvd. SW**<br>**Burien, WA  98166** | **J.P. Morgan Chase Bank**<br>**National Association** | **Long Beach Mortgage Co.**<br>**1400 S Douglas Rd., #100**<br>**Anaheim, CA 92806** |
| **Original Mortgage Lender/Table Funder** | **Mortgage Trustee** | **Title Company** |
| **Long Beach Mortgage Co.**<br>**1400 S Douglas Rd., #100**<br>**Anaheim, CA 92806** | **Northwest Trustee ,**<br>**Services, Inc**<br>**PO Box 997**<br>**Bellevue, WA 98009** | **Chicago Title Insurance**<br>**Company**<br>**25668 104th Avenue SE**<br>**Kent, WA  98031** |

The provided Notice of Trustee Sales refers to the subject property and to a Deed of Trust dated **11/03/2005**, recorded **11/10/2005** under Auditor's file No. **20051110002197**, records of **King** County, **Washington**. The Notice of Trustee Sale names Grantor **"Daisy D. Fidel and Corazon A. Devine" Deutsche Bank National Trust Company** as Trustee, for **Long Beach Mortgage Trust 2006-1.**

## RESEARCH BASES AND ATTACHMENTS

*LONG BEACH MORTGAGE LOAN TRUST 2006-1*
http://access.edgar-online.com/profile.aspx?CompanyID=696804

**424B5**
http://access.edgar-online.com/displayfilinginfo.aspx?type=html&filingid=4151364&TabIndex=2&companyid=696804&ppu=%2fprofile.aspx%3fCompanyID%3d696804

# Long Beach Mortgage
### Specialty Home Loans

### A Washington Mutual Inc. Company

*Sponsor, Seller and Master Servicer*
## $2,442,492,000 (Approximate)

**The Long Beach Mortgage Loan Trust 2006-1 will issue sixteen classes of offered certificates, which are identified on the following page, and five classes of privately placed certificates.  Each class of offered certificates will be entitled to receive monthly distributions of interest or principal or both, beginning on March 27, 2006.  The pass-through rate for each class of offered certificates, will be**

2

variable, and will be based in part on the one-month LIBOR index.  The table on the following page contains a list of the classes of offered certificates, including the original certificate principal balance of each class and pass-through rate.  Further information concerning the offered certificates, including the calculation of the applicable pass-through rates, is included in the summary of this prospectus supplement, beginning at page S-1.

The primary asset of the trust will be a pool of sub-prime first lien, adjustable-rate and fixed-rate residential mortgage loans.  The trust will also contain other assets, which are described on page S-41 of this prospectus supplement.

## SUMMARY OF TERMS

*The following summary highlights selected information from this prospectus supplement.  It does not contain all of the information that you need to consider in making your investment decision.  To understand the terms of the offered certificates, read carefully this entire prospectus supplement and the accompanying prospectus.*

*This summary provides an overview of certain calculations, cash flows and other information to aid your understanding.  This summary is qualified by the full description of these calculations, cash flows and other information in this prospectus supplement and the accompanying prospectus.*

### TRANSACTION PARTICIPANTS

**Sponsor, Seller and Master Servicer**
Long Beach Mortgage Company, a Delaware corporation.
**Depositor**
Long Beach Securities Corp., a Delaware corporation and a wholly owned subsidiary of Long Beach Mortgage Company.
**Issuing Entity**
Long Beach Mortgage Loan Trust 2006-1, a common law trust established pursuant to the pooling agreement among the depositor, the master servicer and the trustee.
**Servicer**
Washington Mutual Bank, a federal savings bank.
**Calculation Agent**
Washington Mutual Mortgage Securities Corp., a Delaware corporation.
**Trustee**
Deutsche Bank National Trust Company, a national banking association.
**Swap Counterparty**
Credit Suisse International.
**NIMS Insurer**
In the future, the depositor may decide to proceed with the issuance of net interest margin securities (" **NIMS** ") to be backed, in whole or in part, by the Class C Certificates and the Class P Certificates.  The NIMS, if issued, would be issued by an affiliate of the depositor or by one or more entities sponsored by an affiliate of the depositor after the closing date.  One or more insurance companies (" **NIMS insurer** ") may issue a financial guaranty insurance policy covering certain payments to be made on the NIMS, if issued.  In such event, the NIMS insurer will have various rights under the pooling agreement and will be able to exercise certain rights that could adversely impact the certificateholders.  See *"Risk Factors— Certain Rights of the NIMS Insurer May Adversely Affect the Rights of Holders of Offered Certificates"* in this prospectus supplement.

### TRANSACTION

On or about February 7, 2006, which is the closing date, the mortgage loans that support the certificates will be sold by Long Beach Mortgage Company, the sponsor of the securitization transaction, to Long

3

Beach Securities Corp., the depositor. On the closing date, the depositor will sell the mortgage loans and related assets to the Long Beach Mortgage Loan Trust 2006-1. In exchange for the mortgage loans and related assets, the trust will issue the certificates pursuant to the order of the depositor.

The mortgage loans will be master serviced by Long Beach Mortgage Company, as master servicer, and serviced by Washington Mutual Bank, as servicer. Washington Mutual Mortgage Securities Corp. will act as calculation agent and be responsible for calculating pay-off amounts for each monthly distribution on the certificates. Some servicing functions will be performed by Deutsche Bank National Trust Company, as trustee. Some servicing functions will be outsourced to third party vendors.

The trustee of the trust will be Deutsche Bank National Trust Company. It will also review the mortgage notes, mortgages and certain other legal documents related to the mortgage loans as custodian for the trust in accordance with the review requirements of the pooling agreement.

### Mortgage Loans

The trust will acquire a pool of first lien, adjustable-rate and fixed-rate residential mortgage loans which will be divided into two loan groups, Loan Group I and Loan Group II. Loan Group I will consist of first lien, adjustable-rate and fixed-rate mortgage loans with principal balances that conform to Fannie Mae and Freddie Mac loan limits and Loan Group II will consist of first lien, adjustable-rate and fixed-rate mortgage loans with principal balances that may or may not conform to Fannie Mae and Freddie Mac loan limits.

As of February 1, 2006, which is the cut-off date, the mortgage loans will consist of approximately 11,301 mortgage loans with an aggregate scheduled principal balance as of the cut-off date of approximately $2,499,990,025 consisting of approximately 7,066 Group I mortgage loans with an aggregate scheduled principal balance as of the cut-off date of approximately $1,097,335,634 and approximately 4,235 Group II mortgage loans with an aggregate scheduled principal balance as of the cut-off date of approximately $1,402,654,390. The scheduled principal balance of a mortgage loan as of any date is equal to the principal balance of that mortgage loan at origination, less all scheduled payments of principal on that mortgage loan due on or before that date, whether or not received.

## RISK FACTORS

**Mortgage Loans Originated under the Sponsor's Underwriting Guidelines Carry a Risk of High Delinquencies**

The sponsor's business primarily consists of originating, purchasing, selling and, through its affiliate Washington Mutual Bank (" **WMB** "), servicing mortgage loans secured by one- to four-family residences that generally do not conform to the underwriting guidelines typically applied by banks and other primary lending institutions, particularly with respect to a prospective borrower's credit history and debt-to-income ratio. Borrowers who qualify under the sponsor's underwriting guidelines generally have equity in their property and repayment ability but may have a record of major derogatory credit items such as outstanding judgments or prior bankruptcies. The sponsor originates mortgage loans based on its underwriting guidelines and does not determine whether such mortgage loans would be acceptable for purchase by Fannie Mae or Freddie Mac.

4

The sponsor's underwriting guidelines are primarily intended to evaluate the applicant's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral for the mortgage loan.  The sponsor's considerations in underwriting a mortgage loan include a mortgagor's credit history, repayment ability and debt service-to-income ratio and the value and adequacy of the mortgaged property as collateral, as well as the type and use of the mortgaged property.  The sponsor's underwriting guidelines do not prohibit a mortgagor from obtaining secondary financing, from the sponsor or from another source, at the time of origination of the sponsor's first lien, which secondary financing would reduce the equity the mortgagor would otherwise have in the related mortgaged property as indicated in the sponsor's loan-to-value ratio determination.

As a result of such underwriting guidelines, the mortgage loans in the mortgage pool are likely to experience rates of delinquency, foreclosure and bankruptcy that are higher, and that may be substantially higher, than those experienced by mortgage loans underwritten in a more traditional manner.

Furthermore, changes in the values of mortgaged properties may have a greater effect on the delinquency, foreclosure, bankruptcy and loss experience of the mortgage loans than on mortgage loans originated in a more traditional manner.  No assurance can be given that the values of the related mortgaged properties have remained or will remain at the levels in effect on the dates of origination of the related mortgage loans.  *See* "Underwriting of the Mortgage Loans" in this prospectus supplement.

**The Servicer's Limited Experience Servicing Mortgage Loans Underwritten Under the Sponsor's Underwriting Guidelines Could Result in Higher Levels of Delinquency and Realized Losses**

The sponsor is the master servicer under the pooling agreement.  In April 2001, the sponsor transferred to WMB substantially all of its servicing portfolio and servicing operations, and in connection therewith, has appointed WMB as a servicer to perform, on behalf of the master servicer, the servicing functions that are required to be performed with respect to the mortgage loans.  WMB is an affiliate of the sponsor.  The sponsor or WMB has serviced the mortgage loans since origination or acquisition by the sponsor.

While WMB is an experienced mortgage loan servicer, WMB had no experience prior to April 2001 servicing mortgage loans similar to the mortgage loans.  As a result, WMB has had limited experience servicing mortgage loans similar to the mortgage loans.  WMB's limited experience in servicing mortgage loans similar to the mortgage loans could lead to a higher level of delinquencies and realized losses than would be the case if the mortgage loans were serviced by a servicer with more experience servicing mortgage loans similar to the mortgage loans.

Because WMB commenced its servicing of mortgage loans similar to the mortgage loans in April 2001, WMB has limited historical delinquency, bankruptcy, foreclosure or default experience that may be referred to for purposes of examining WMB's past performance in servicing mortgage loans similar to the mortgage loans.

**A Conflict of Interest Exists Between the Interests of the Master Servicer as Holder of the Class C Certificate and the Interests of Holders of the Other Certificates**

5

The master servicer will initially, directly or indirectly, own all or a portion of the Class C Certificates and the Residual Certificates . The timing of mortgage loan foreclosures and sales of the related mortgaged properties may affect the weighted average lives and yields of the offered certificates.  Investors should consider that the timing of such foreclosures or sales may not be in the best interests of all certificateholders and that no formal policies or guidelines have been established to resolve or minimize such a conflict of interest.

**The First Payment Date on Some Mortgage Loans Has Not Occurred Yet Meaning that those Borrowers Could Not be Delinquent on the Referenced Monthly Payment**

As of the date of this prospectus supplement, there were no Group I mortgage loans or Group II mortgage loans on which the monthly payment due in December 2005 had not been received.  However, investors in the offered certificates should realize that approximately 99.12% of the Group I mortgage loans and approximately 99.51% of the Group II mortgage loans (in each case by aggregate scheduled principal balance of the mortgage loans in the related loan group as of the cut-off date) have a first payment date occurring on or after January 2006 and, therefore, such mortgage loans could not have been delinquent with respect to their January 2006 monthly payment.

**A Simultaneous-Second Lien Mortgage Loan on a Mortgaged Property May Increase the Risk that the Related Mortgage Loan Becomes Subject to Foreclosure**

With respect to approximately 30.11% of the Group I mortgage loans and approximately 72.06% of the Group II mortgage loans (in each case by aggregate scheduled principal balance of the mortgage loans in the related loan group as of the cut-off date), at the time of origination of such first lien mortgage loan, the originator also originated a second lien mortgage loan which is not included in the trust.  The weighted average original loan-to-value ratio of such mortgage loans is approximately 79.96%, with respect to such Group I mortgage loans, and approximately 79.94%, with respect to such Group II mortgage loans, and the weighted average original combined loan-to-value ratio of such mortgage loans (including the related simultaneous second lien) is approximately 99.27%, with respect to such Group I mortgage loans, and approximately 99.54%, with respect to such Group II mortgage loans.  The weighted average original combined loan-to-value ratio (including the related simultaneous second lien) of all Group I mortgage loans is approximately 85.41% and of all Group II mortgage loans is approximately 94.90%.  With respect to such mortgage loans, foreclosure frequency may be increased relative to mortgage loans that were originated without a simultaneous second lien because mortgagors with a simultaneous second lien have less equity in the mortgaged property.  Investors should also note that any mortgagor may obtain secondary financing at any time subsequent to the date of origination of their mortgage loan from the sponsor or from any other lender.

**Mortgages with High Loan-to-Value Ratios May have a Greater Risk of Loss**

Mortgage loans with higher loan-to-value ratios may present a greater risk of loss than mortgage loans with loan-to-value ratios of 80% or below.  Approximately 27.13% of the Group I mortgage loans and approximately 13.02% of the Group II mortgage loans (in each case by aggregate scheduled principal balance of the mortgage loans in the related loan group as of the cut-off date) had loan-to-value ratios at origination in excess of 80%, but no more than 100%.  Additionally, the master servicer's determination of the value of a mortgaged property used in the calculation of the loan-to-values ratios of the mortgage loans may differ from the appraised value of such mortgaged properties or the actual value of such mortgaged properties.

**Violation of Federal or State Laws May Result in Losses on the Mortgage Loans**

Applicable state laws generally regulate interest rates and other charges, require certain disclosure, and require licensing of the sponsor.  In addition, other state laws, municipal ordinances, public policy and general principles of equity relating to the protection of consumers, unfair and deceptive practices

6

(including predatory lending practices), and debt collection practices may apply to the origination, servicing and collection of the mortgage loans.

The mortgage loans are also subject to federal laws, including:

• the Federal Truth-in-Lending Act and Regulation Z promulgated thereunder, which require certain disclosures to the mortgagors regarding the terms of the mortgage loans;

• the Equal Credit Opportunity Act and Regulation B promulgated thereunder, which prohibit discrimination on the basis of age, race, color, sex, religion, marital status, national origin, receipt of public assistance or the exercise of any right under the Consumer Credit Protection Act, in the extension of credit; and

• the Fair Credit Reporting Act, which regulates the use and reporting of information related to the mortgagor's credit experience.

Violations of certain provisions of these federal laws may limit the ability of the master servicer to collect all or part of the principal of or interest on the mortgage loans and in addition could subject the trust to damages and administrative enforcement. In particular, the sponsor's failure to comply with certain requirements of the Federal Truth-in-Lending Act , as implemented by Regulation Z, could subject the trust (and other assignees of the mortgage loans) to monetary penalties, and could result in the obligors' rescinding the mortgage loans against either the trust or subsequent holders of the mortgage loans. *See* "Legal Aspects of Mortgage Assets—Anti-Deficiency Legislation and Other Limitations on Lenders" in the accompanying prospectus.

The sponsor will represent that at origination each mortgage loan complied with all applicable federal and state laws and regulations. In addition, the sponsor will represent that none of the mortgage loans is subject to the requirements of the Home Ownership and Equity Protection Act of 1994 (" **HOEPA** ") or is a "high cost" or "predatory" loan under any state or local law or regulation applicable to the originator of such mortgage loan, or which would result in liability to the purchaser or assignee of such mortgage loan under any predatory or abusive lending law. In the event of a breach of any of such representations, the sponsor will be obligated to cure such breach or repurchase or replace the affected mortgage loan, in the manner and to the extent described under "The Trust—Assignment of the Mortgage Loans and Other Assets to the Trust" in this prospectus supplement.

Under the anti-predatory lending laws of some states, the mortgagor is required to meet a net tangible benefits test in connection with the origination of the related mortgage loan. This test may be highly subjective and open to interpretation. As a result, a court may determine that a mortgage loan does not meet the test even if an originator reasonably believed that the test was satisfied. Any determination by a court that a mortgage loan does not meet the test will result in a violation of the state anti-predatory lending law, in which case the sponsor will be required to repurchase such mortgage loan from the trust.

In addition to HOEPA, a number of legislative proposals have been introduced at the federal, state and local level that are designed to discourage predatory lending practices. Some states have enacted, or may enact, laws or regulations that prohibit inclusion of some provisions in mortgage loans that have mortgage rates or origination costs in excess of prescribed levels, and require that mortgagors be given certain disclosures prior to the consummation of such mortgage loans. In some cases, state law may impose requirements and restrictions more stringent than those in HOEPA. The sponsor's failure to comply with these laws could subject the trust, and other assignees of the mortgage loans, to monetary penalties and could result in mortgagors exercising their rights to rescind their mortgage loans against either the trust or subsequent holders of the mortgage loans. Lawsuits have been brought in various states making claims against assignees of high cost mortgage loans for violations of state law. Named defendants in these cases include numerous participants within the secondary mortgage market, including some securitization trusts.

7

**General**

Long Beach Mortgage Company, the sponsor of the securitization transaction, is a Delaware corporation that originates, purchases and sells sub-prime mortgage loans secured by first and second liens on one- to four-family residences that generally do not conform to the underwriting guidelines typically applied by banks and other primary lending institutions, particularly with respect to a prospective borrower's credit history and debt-to-income ratio. Borrowers who qualify under the sponsor's underwriting guidelines generally have equity in their property and repayment ability but may have a record of major derogatory credit items such as outstanding judgments or prior bankruptcies. The sponsor originates mortgage loans based on its underwriting guidelines and does not determine whether such mortgage loans would be acceptable for purchase by Fannie Mae or Freddie Mac. The mortgage loans originated by the sponsor are not insured by the Federal Housing Administration or partially guaranteed by the U.S. Department of Veteran Affairs. It is a direct wholly owned subsidiary of Washington Mutual, Inc. At September 30, 2005, Washington Mutual, Inc. and its subsidiaries had assets of $333.6 billion.

Securitization of mortgage loans is an integral part of the sponsor's management of its capital. It has engaged in securitizations of first and second lien residential mortgage loans through Long Beach Securities Corp., as depositor, since 2000. From 1997 until 2000, the sponsor engaged in securitizations of residential mortgage loans through unaffiliated depositors.

The sponsor generally acts as master servicer of all mortgage loans securitized by the sponsor, and it will act as master servicer of the mortgage loans owned by the trust. The sponsor participated with the underwriters in structuring the securitization transaction.

## UNDERWRITING OF THE MORTGAGE LOANS

**General**

All of the mortgage loans owned by the trust have been, or will be, originated by the sponsor through wholesale brokers or re-underwritten upon acquisition from correspondents by the sponsor generally in accordance with the sponsor's underwriting guidelines described in this section. The sponsor's underwriting guidelines are primarily intended to evaluate the prospective borrower's credit standing and repayment ability as well as the value and adequacy of the mortgaged property as collateral.

Prospective borrowers are required to complete a standard loan application in which they provide financial information regarding the amount of income and related sources, liabilities and related monthly payments, credit history and employment history, as well as certain other personal information. During the underwriting or re-underwriting process, the sponsor reviews and verifies the prospective borrower's sources of income (only under the full documentation residential loan program), calculates the amount of income from all such sources indicated on the loan application, reviews the credit history and credit score(s) of the prospective borrower and calculates the debt-to-income ratio to determine the prospective borrower's ability to repay the loan, and determines whether the mortgaged property complies with the sponsor's underwriting guidelines.

All of the mortgage loans are either originated under the sponsor's underwriting programs based on loan application packages submitted through wholesale mortgage brokerage companies or purchased from approved correspondents. Loan application packages submitted through mortgage brokerage companies, containing relevant credit, property and underwriting information on the loan request, are compiled by the mortgage brokerage company and submitted to the sponsor for approval and funding. The mortgage brokerage companies receive the loan origination fee charged to the borrower at the time the loan is made. No single mortgage brokerage company accounts for more than 5% of the mortgage loans originated or acquired by the sponsor, as measured by outstanding principal balance.

8

The sponsor originates or acquires mortgage loans that generally do not conform to the underwriting guidelines typically applied by prime lending institutions, Fannie Mae or Freddie Mac, particularly with respect to a prospective borrower's credit history, credit score(s), LTV and debt-to-income ratio. Borrowers who qualify under the sponsor's underwriting guidelines may have equity in their property and repayment ability but may have a record of major derogatory credit items such as outstanding judgments or prior bankruptcies. All debts in bankruptcy must be paid off or discharged or the proceeding dismissed prior to the funding of the mortgage loan. The underwriting guidelines permit Chapter 13 bankruptcy buyouts.

### Evaluation of the Borrower's Credit Standing

The sponsor obtains a credit report on each prospective borrower from a credit reporting company in addition to the one obtained from the wholesale broker or correspondent. The sponsor then compares the two credit reports. The report typically contains information relating to such matters as credit payment history with local and national merchants and lenders, installment debt payments, credit score(s) and any record of defaults, bankruptcy, repossession, suits or judgments.

The sponsor uses a credit scoring methodology as part of its underwriting and re-underwriting process. The credit scoring methodology assesses a prospective borrower's ability to repay a mortgage loan based upon predetermined mortgage loan characteristics and credit risk factors. The credit scoring methodology generates a credit score usually ranging from around 300 to 800, with a higher score indicating a borrower with a relatively more favorable credit history. The credit score is based upon such factors as the prospective borrower's payment history, delinquencies on accounts, levels of outstanding debt, length of credit history and types of credit and bankruptcy experience.

### Evaluation of the Borrower's Repayment Ability

The sponsor's underwriting guidelines permit first lien mortgage loans with loan-to-value ratios at origination of up to 100%, or 80% if at the time of origination of the first lien mortgage loan, the originator also originated a second lien mortgage loan. The maximum allowable loan-to-value ratio varies based upon the residential loan program, income documentation, property type, creditworthiness and debt service-to-income ratio of the prospective borrower and the overall risks associated with the loan decision. The maximum combined loan-to-value ratio, including any second lien mortgage subordinate to the sponsor's first lien mortgage, is generally 100% under the "Premium A," "A," "A-," "B+" and "B" risk categories, and 95% under the "C" risk category.

### Evaluation of the Adequacy of Collateral

The adequacy of the mortgaged property as collateral is generally determined by an appraisal of the mortgaged property that generally conforms to Fannie Mae and Freddie Mac appraisal standards and a review of that appraisal. The mortgaged properties are appraised by licensed independent appraisers who have satisfied the servicer's appraiser screening process. In most cases, properties in below average condition, including properties requiring major deferred maintenance, are not acceptable under the sponsor's underwriting programs. Each appraisal includes a market data analysis based on recent sales of comparable homes in the area and, where deemed appropriate, replacement cost analysis based on the current cost of constructing a similar home.

Every independent appraisal is reviewed by an employee of the servicer before the loan is funded or re-underwritten. Depending upon the original principal balance and loan-to-value ratio of the mortgaged property, the appraisal review may include an administrative review, technical review, desk review or field review of the original appraisal.

The sponsor requires that all mortgage loans in its underwriting programs have title insurance and be secured by liens on real property. The sponsor also requires that fire and extended coverage casualty

9

insurance be maintained on the mortgaged property in an amount at least equal to the principal balance of the mortgage loan or the replacement cost of the property, whichever is less. The sponsor does not require that the mortgage loans originated or re-underwritten under its underwriting programs be covered by a primary mortgage insurance policy.

**Underwriting Exceptions**

On a case-by-case basis and only with the approval of an employee with appropriate risk level authority, the sponsor may determine that, based upon compensating factors, a prospective borrower not strictly qualifying under its underwriting risk category guidelines warrants an underwriting exception. Compensating factors may include, but are not limited to, low loan-to-value ratio, low debt-to-income ratio, good credit history, stable employment and time in residence at the prospective borrower's current address. It is expected that some of the mortgage loans owned by the trust will be underwriting exceptions.

**Documentation Programs**

The mortgage loans have been, or will be, originated or re-underwritten upon acquisition, generally in accordance with guidelines established by the sponsor under its full documentation, limited documentation or stated income documentation residential loan programs.

Under the full documentation residential loan program, salaried prospective borrowers are generally required to submit their most recent W-2s and pay stubs and self-employed prospective borrowers are generally required to submit their most recent federal income tax return. Under the stated income documentation residential loan program, prospective borrowers are required to state their income on the application but are not required to submit any documents in support. Under the limited documentation residential loan program, salaried prospective borrowers or self-employed prospective borrowers are generally required to submit their most recent six months of personal bank statements or business bank statements. Under the limited documentation and stated income documentation residential loan programs, the prospective borrower's employment and income sources must be stated on the prospective borrower's application. The prospective borrower's income as stated must be reasonable for the related occupation and such determination as to reasonableness is subject to the loan underwriter's discretion. However, the prospective borrower's income as stated on the application is not independently verified. Verification of employment is required for salaried prospective borrowers. Maximum loan-to-value ratios under the stated income documentation residential loan programs are generally lower than those permitted under the full documentation and limited documentation residential loan programs. Generally, the same underwriting guidelines that apply to the full documentation and limited documentation residential loan programs, except as noted in this section, apply to the limited documentation and stated income documentation residential loan programs.

**Quality Control Review**

As part of its quality control system, the sponsor re-verifies information that has been provided by the mortgage brokerage company prior to funding a loan and the sponsor conducts a post-funding audit of every origination file. In addition, WMB, as servicer, periodically audits files based on a statistical sample of closed loans. In the course of its pre-funding review, the sponsor re-verifies the income of each prospective borrower or, for a self-employed prospective borrower, reviews the income documentation obtained under the full documentation and limited documentation residential loan programs. The sponsor generally requires evidence of the funds available to close on the mortgage loan.

**Risk Categories**

Under the sponsor's underwriting programs, various risk categories are used to grade the likelihood that the prospective borrower will satisfy the repayment conditions of the mortgage loan. These risk

10

categories establish the maximum permitted loan-to-value ratio and loan amount, given the occupancy status of the mortgaged property and the prospective borrower's credit history and debt ratio.

Mortgage loans are originated under the sponsor's underwriting guidelines using the following categories and criteria for grading the potential likelihood that a prospective borrower will satisfy the repayment obligations of a mortgage loan:

Credit Grade: "Premium A". Under the "Premium A" risk category, the prospective borrower must have a credit report reflecting a one year credit history and a prior mortgage or rental history evidencing no 30-day late payments during the last 12 months. No notice of default filings or foreclosures may have occurred during the preceding 36 months. No open lawsuits are permitted; however, the prospective borrower may be a plaintiff in a lawsuit if a reasonable explanation is provided. Maximum qualifying debt service-to-income ratio is 55. A maximum loan-to-value ratio of 100% is permitted for owner occupied single-family, two-unit and condominium properties, a maximum loan-to-value ratio of 95% is permitted for second homes, and a maximum loan-to-value ratio of 85% is permitted for owner occupied mortgage properties consisting of three-to-four units. A maximum loan-to-value ratio of 90% is permitted for non-owner occupied single-family, two-unit and condominium properties, and a maximum loan-to-value ratio of 80% is permitted for non-owner occupied properties consisting of three-to-four units.

Credit Grade: "A". Under the "A" risk category, a maximum of one 30-day late payment within the last 12 months is permitted on an existing mortgage loan. A maximum of one rolling 30-day late payment is allowed. No notice of default filings or foreclosures may have occurred during the preceding 36 months. The mortgaged property must be in at least average condition. A maximum loan-to-value ratio of 100% is permitted for owner occupied single-family, two-unit and condominium properties, a maximum loan-to-value ratio of 95% is permitted for second homes, and a maximum loan-to-value ratio of 85% is permitted for owner occupied mortgaged properties consisting of three-to-four units. A maximum loan-to-value ratio of 90% is permitted for non-owner occupied single-family, two-unit and condominium properties, and a maximum loan-to-value ratio of 80% is permitted for non-owner occupied mortgaged properties consisting of three-to-four units. Generally, the debt service-to-income ratio maximum may be 55% based on the prospective borrower's net disposable income and if the loan-to-value ratio is less than or equal to 90%. In addition, the prospective borrower must have a credit score of 500 or higher (550 or higher for interest only mortgage loans).

Credit Grade: "A-". Under the "A-" risk category, a maximum of two 30-day late payments within the last 12 months is permitted on an existing mortgage loan. A maximum of two rolling 30-day late payments is allowed. No notice of default filings or foreclosures may have occurred during the preceding 36 months. The mortgaged property must be in at least average condition. A maximum loan-to-value ratio of 95% is permitted for owner occupied single-family, two-unit and condominium properties, a maximum loan-to-value ratio of 90% is permitted for second homes, and a maximum loan-to-value ratio of 85% is permitted for owner occupied mortgaged properties consisting of three-to-four units. A maximum loan-to-value ratio of 90% is permitted for non-owner occupied single-family, two-unit and condominium properties, and a maximum loan-to-value ratio of 80% is permitted for non-owner occupied mortgaged properties consisting of three-to-four units. Generally, the debt service-to-income ratio maximum may be 55% based on the prospective borrower's net disposable income and if the loan-to-value ratio is less than or equal to 90%. In addition, the prospective borrower must have a credit score of 500 or higher (550 or higher for interest only mortgage loans).

Credit Grade: "B+". Under the "B+" risk category, a maximum of three 30-day late payments within the last 12 months is permitted on an existing mortgage loan. No notice of default filings or foreclosures may have occurred during the preceding 24 months. The mortgaged property must be in at least average condition. A maximum loan-to-value ratio of 95% is permitted for owner occupied single-family, two-unit and condominium properties, a maximum loan-to-value ratio of 90% is permitted for second homes, and a maximum loan-to-value ratio of 85% is permitted for owner occupied mortgaged properties consisting of three-to-four units. A maximum loan-to-value ratio of 90% is permitted for non-owner occupied single-family, two-unit and condominium properties, and a maximum loan-to-value ratio

11

of 80% is permitted for non-owner occupied mortgaged properties consisting of three-to-four units. Generally, the debt service-to-income ratio must be 55% or less based on the prospective borrower's net disposable income and/or loan-to-value ratio. In addition, the prospective borrower must have a credit score of 500 or higher (550 or higher for interest only mortgage loans).

Credit Grade: "B". Under the "B" risk category, a maximum of one 60-day late payment within the last 12 months is permitted on an existing mortgage loan. No notice of default filings or foreclosures may have occurred during the preceding 18 months. The mortgaged property must be in at least average condition. A maximum loan-to-value ratio of 90% is permitted for owner occupied single-family, two-unit and condominium properties, a maximum loan-to-value ratio of 85% is permitted for second homes, and a maximum loan-to-value ratio of 80% is permitted for owner occupied mortgaged properties consisting of three-to-four units. A maximum loan-to-value ratio of 85% is permitted for non-owner occupied single-family, two-unit and condominium properties, and a maximum loan-to-value ratio of 75% is permitted for non-owner occupied mortgaged properties consisting of three-to-four units. Generally, the debt service-to-income ratio must be 55% or less based on the prospective borrower's net disposable income and/or loan-to-value ratio. In addition, the prospective borrower must have a credit score of 500 or higher (550 or higher for interest only mortgage loans).

Credit Grade: "C". Under the "C" risk category, the prospective borrower may have experienced significant credit problems in the past. A maximum of four 60-day late payments and no 90-day late payments, or three 60-day late payments and one 90-day late payment, or if the loan-to-value ratio does not exceed 70%, two 90-day late payments and one 120-day late payment, within the last 12 months is permitted on an existing mortgage loan. No notice of default filings or foreclosures may have occurred during the preceding 12 months. The mortgaged property must be in at least average condition. A maximum loan-to-value ratio of 85% is permitted for owner occupied single-family, two-unit and condominium properties, a maximum loan-to-value ratio of 80% is permitted for second homes, and a maximum loan-to-value ratio of 75% is permitted for owner occupied mortgaged properties consisting of three-to-four units. A maximum loan-to-value ratio of 80% is permitted for non-owner occupied single-family, two-unit and condominium properties, and a maximum loan-to-value ratio of 70% is permitted for non-owner occupied mortgaged properties consisting of three-to-four units. Generally, the debt service-to-income ratio must not exceed 55%.

In general, higher credit risk mortgage loans are graded in categories which permit higher debt ratios and more (or more recent) major derogatory credit items such as outstanding judgments or prior bankruptcies; however, the sponsor's underwriting programs establish lower maximum loan-to-value ratios and maximum loan amounts for loans graded in such categories.

There can be no assurance that every mortgage loan owned by the trust was originated in conformity with the applicable underwriting guidelines in all material respects. The sponsor's underwriting guidelines include a set of specific criteria pursuant to which the underwriting evaluation is made. The application of the sponsor's underwriting guidelines does not imply that each specific criterion was satisfied with respect to every mortgage loan. Rather, a mortgage loan will be considered to be originated in accordance with a given set of underwriting guidelines if, based on an overall qualitative evaluation, the mortgage loan is in substantial compliance with those underwriting guidelines. For example, a mortgage loan may be considered to comply with a set of underwriting guidelines, even if one or more specific criteria included in those underwriting guidelines were not satisfied, if other factors compensated for the criteria that were not satisfied or if the mortgage loan is considered to be in substantial compliance with the underwriting guidelines. The sponsor applies its underwriting guidelines in accordance with a procedure that complies with applicable federal and state laws and regulations.

## THE TRUST

The issuer of the certificates, the Long Beach Mortgage Loan Trust 2006-1, will be a common law trust established pursuant to the pooling agreement among the depositor, Long Beach Mortgage Company,

as master servicer, and Deutsche Bank National Trust Company, as trustee, and will be governed by the laws of the State of New York.

The trust will not own any assets other than the mortgage loans and the other assets described below. The trust will not have any liabilities other than those incurred in connection with the pooling agreement and any related agreement. The trust will not have any directors, officers, or other employees. No equity contribution will be made to the trust by the sponsor, the depositor or any other party, and the trust will not have any other capital. The fiscal year end of the trust will be December 31. The trustee's initial set-up fees will be paid by the sponsor. The trustee will act on behalf of the trust and the certificateholders. The trustee will be entitled to income earnings on deposits in the distribution account.

## Assumed Mortgage Loan Characteristics

### Group I Mortgage Loans

| Loan Number | Principal Balance ($) | Mortgage Rate (%) | Months to Next Adjustment Date | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Original Term (months) | Remaining Term (months) | Original Interest Only Term (months) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 64,646.68 | 8.10000 | N/A | N/A | N/A | N/A | N/A | N/A | 120 | 119 | 0 |
| 2 | 1,375,219.16 | 8.39800 | N/A | N/A | N/A | N/A | N/A | N/A | 180 | 178 | 0 |
| 3 | 579,357.44 | 8.10400 | N/A | N/A | N/A | N/A | N/A | N/A | 180 | 179 | 0 |
| 4 | 2,465,938.98 | 8.05600 | N/A | N/A | N/A | N/A | N/A | N/A | 180 | 179 | 0 |
| 5 | 103,725.14 | 10.07700 | N/A | N/A | N/A | N/A | N/A | N/A | 240 | 238 | 0 |
| 6 | 287,712.24 | 7.25600 | N/A | N/A | N/A | N/A | N/A | N/A | 240 | 238 | 0 |
| 7 | 36,821,876.78 | 8.26200 | N/A | N/A | N/A | N/A | N/A | N/A | 360 | 358 | 0 |
| 8 | 6,954,594.12 | 7.94800 | N/A | N/A | N/A | N/A | N/A | N/A | 360 | 358 | 0 |
| 9 | 6,724,832.85 | 8.04800 | N/A | N/A | N/A | N/A | N/A | N/A | 360 | 358 | 0 |
| 10 | 68,587,797.70 | 7.79200 | N/A | N/A | N/A | N/A | N/A | N/A | 360 | 358 | 0 |
| 11 | 4,957,439.13 | 8.46700 | N/A | N/A | N/A | N/A | N/A | N/A | 480 | 479 | 0 |
| 12 | 634,995.48 | 8.22700 | N/A | N/A | N/A | N/A | N/A | N/A | 480 | 479 | 0 |
| 13 | 3,223,260.61 | 7.70100 | N/A | N/A | N/A | N/A | N/A | N/A | 480 | 478 | 0 |
| 14 | 17,813,023.78 | 7.51400 | N/A | N/A | N/A | N/A | N/A | N/A | 480 | 478 | 0 |
| 15 | 159,987,073.95 | 9.08100 | 22 | 5.20400 | 15.08100 | 9.08100 | 1.99600 | 1.00000 | 360 | 358 | 0 |
| 16 | 11,696,068.94 | 8.80200 | 22 | 5.28700 | 14.80200 | 8.80200 | 2.00000 | 1.00000 | 360 | 358 | 0 |
| 17 | 254,273,836.71 | 8.82000 | 22 | 5.28300 | 14.82000 | 8.82000 | 1.99900 | 1.00000 | 360 | 358 | 0 |
| 18 | 51,259,332.79 | 8.94700 | 22 | 5.23300 | 14.94700 | 8.94700 | 2.00000 | 1.00000 | 360 | 358 | 0 |
| 19 | 7,625,933.34 | 8.34200 | 22 | 5.10600 | 14.34200 | 8.34200 | 1.00000 | 1.00000 | 360 | 358 | 24 |
| 20 | 2,032,399.99 | 7.53900 | 22 | 5.04900 | 13.53900 | 7.53900 | 1.00000 | 1.00000 | 360 | 358 | 24 |
| 21 | 19,334,503.47 | 7.26100 | 22 | 4.99000 | 13.26100 | 7.26100 | 1.00000 | 1.00000 | 360 | 358 | 24 |
| 22 | 4,262,272.15 | 7.13700 | 22 | 4.99000 | 13.13700 | 7.13700 | 1.00000 | 1.00000 | 360 | 358 | 24 |
| 23 | 55,100,378.24 | 8.78800 | 22 | 5.03700 | 14.78800 | 8.78800 | 2.00000 | 1.00000 | 480 | 478 | 0 |
| 24 | 9,216,082.62 | 8.49400 | 22 | 5.00700 | 14.49400 | 8.49400 | 2.00000 | 1.00000 | 480 | 478 | 0 |
| 25 | 133,421,339.62 | 7.87800 | 22 | 5.03500 | 13.87800 | 7.87800 | 1.99900 | 1.00000 | 480 | 478 | 0 |
| 26 | 33,367,739.47 | 7.83900 | 22 | 5.01700 | 13.83900 | 7.83900 | 2.00000 | 1.00000 | 480 | 478 | 0 |
| 27 | 59,137,068.00 | 8.57500 | 34 | 5.14600 | 14.57500 | 8.57500 | 2.99500 | 1.00000 | 360 | 358 | 0 |
| 28 | 926,102.54 | 8.06300 | 34 | 4.99000 | 14.06300 | 8.06300 | 3.00000 | 1.00000 | 360 | 358 | 0 |
| 29 | 1,027,183.40 | 8.22700 | 34 | 4.99000 | 14.22700 | 8.22700 | 3.00000 | 1.00000 | 360 | 358 | 0 |
| 30 | 14,169,980.22 | 8.07200 | 34 | 5.11800 | 14.07200 | 8.07200 | 3.00000 | 1.00000 | 360 | 358 | 0 |
| 31 | 4,909,809.34 | 7.32200 | 34 | 4.99000 | 13.32200 | 7.32200 | 3.00000 | 1.00000 | 360 | 358 | 36 |
| 32 | 696,000.00 | 7.26500 | 34 | 5.14800 | 13.26500 | 7.26500 | 3.00000 | 1.00000 | 360 | 358 | 36 |
| 33 | 2,145,600.01 | 7.11700 | 34 | 4.99000 | 13.11700 | 7.11700 | 3.00000 | 1.00000 | 360 | 358 | 36 |
| 34 | 41,850,414.37 | 8.53900 | 34 | 5.01700 | 14.53900 | 8.53900 | 2.98800 | 1.00000 | 480 | 478 | 0 |
| 35 | 2,010,243.83 | 8.97500 | 35 | 4.99000 | 14.97500 | 8.97500 | 3.00000 | 1.00000 | 480 | 479 | 0 |
| 36 | 2,724,985.65 | 9.20500 | 34 | 5.27100 | 15.20500 | 9.20500 | 3.00000 | 1.00000 | 480 | 478 | 0 |
| 37 | 14,063,478.57 | 7.72300 | 34 | 5.03100 | 13.72300 | 7.72300 | 3.00000 | 1.00000 | 480 | 478 | 0 |
| 38 | 33,782,335.87 | 8.82900 | 59 | 5.12000 | 14.82900 | 8.82900 | 2.99100 | 1.00000 | 360 | 359 | 0 |
| 39 | 1,094,059.01 | 8.04600 | 58 | 4.99000 | 14.04600 | 8.04600 | 3.00000 | 1.00000 | 360 | 358 | 0 |
| 40 | 1,363,772.25 | 7.82400 | 58 | 4.99000 | 13.82400 | 7.82400 | 3.00000 | 1.00000 | 360 | 358 | 0 |
| 41 | 16,083,514.37 | 8.00000 | 58 | 5.27000 | 14.00000 | 8.00000 | 3.00000 | 1.00000 | 360 | 358 | 0 |
| 42 | 1,695,116.50 | 7.53500 | 58 | 4.99000 | 13.53500 | 7.53500 | 3.00000 | 1.00000 | 360 | 358 | 60 |
| 43 | 643,999.99 | 7.79800 | 59 | 4.99000 | 13.79800 | 7.79800 | 3.00000 | 1.00000 | 360 | 359 | 60 |
| 44 | 200,000.00 | 7.05000 | 59 | 4.99000 | 13.05000 | 7.05000 | 3.00000 | 1.00000 | 360 | 359 | 60 |
| 45 | 6,640,588.93 | 7.21400 | 58 | 4.99000 | 13.21400 | 7.21400 | 3.00000 | 1.00000 | 360 | 358 | 60 |

14

Assumed Mortgage Loan Characteristics

Group II Mortgage Loans

| Loan Number | Principal Balance ($) | Mortgage Rate (%) | Months to Next Adjustment Date | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Original Term (months) | Remaining Term (months) | Original Interest Only Term (months) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 56,649.89 | 9.00000 | N/A | N/A | N/A | N/A | N/A | N/A | 180 | 179 | 0 |
| 2 | 521,882.75 | 6.60000 | N/A | N/A | N/A | N/A | N/A | N/A | 240 | 238 | 0 |
| 3 | 8,561,823.64 | 8.51600 | N/A | N/A | N/A | N/A | N/A | N/A | 360 | 358 | 0 |
| 4 | 4,862,540.51 | 7.94700 | N/A | N/A | N/A | N/A | N/A | N/A | 360 | 358 | 0 |
| 5 | 3,229,981.30 | 7.48200 | N/A | N/A | N/A | N/A | N/A | N/A | 360 | 358 | 0 |
| 6 | 30,953,459.87 | 7.69000 | N/A | N/A | N/A | N/A | N/A | N/A | 360 | 358 | 0 |
| 7 | 2,831,238.05 | 8.76900 | N/A | N/A | N/A | N/A | N/A | N/A | 480 | 478 | 0 |
| 8 | 1,457,819.21 | 7.12000 | N/A | N/A | N/A | N/A | N/A | N/A | 480 | 479 | 0 |
| 9 | 2,209,573.68 | 8.31200 | N/A | N/A | N/A | N/A | N/A | N/A | 480 | 478 | 0 |
| 10 | 11,582,549.22 | 7.36900 | N/A | N/A | N/A | N/A | N/A | N/A | 480 | 478 | 0 |
| 11 | 113,492,048.32 | 8.81700 | 22 | 5.06600 | 14.81700 | 8.81700 | 2.00000 | 1.00000 | 360 | 358 | 0 |
| 12 | 13,392,836.23 | 8.64800 | 22 | 5.28100 | 14.64800 | 8.64800 | 2.00000 | 1.00000 | 360 | 358 | 0 |
| 13 | 180,877,690.48 | 8.35300 | 22 | 5.21000 | 14.35300 | 8.35300 | 1.99800 | 1.00000 | 360 | 358 | 0 |
| 14 | 28,933,807.14 | 8.17600 | 22 | 5.20400 | 14.17600 | 8.17600 | 2.00000 | 1.00000 | 360 | 358 | 0 |
| 15 | 20,898,629.97 | 8.24900 | 22 | 4.99000 | 14.24900 | 8.24900 | 1.00000 | 1.00000 | 360 | 358 | 24 |
| 16 | 9,751,008.77 | 7.92800 | 22 | 4.99000 | 13.92800 | 7.92800 | 1.00000 | 1.00000 | 360 | 358 | 24 |
| 17 | 71,419,275.07 | 7.49000 | 22 | 5.00500 | 13.49000 | 7.49000 | 1.00000 | 1.00000 | 360 | 358 | 24 |
| 18 | 16,901,867.00 | 7.43000 | 22 | 4.99000 | 13.43000 | 7.43000 | 1.00000 | 1.00000 | 360 | 358 | 24 |
| 19 | 125,509,647.28 | 8.61400 | 22 | 5.01800 | 14.61400 | 8.61400 | 2.00000 | 1.00000 | 480 | 478 | 0 |
| 20 | 49,650,439.55 | 8.29000 | 22 | 5.02100 | 14.29000 | 8.29000 | 2.00000 | 1.00000 | 480 | 478 | 0 |
| 21 | 414,930,549.70 | 7.79200 | 22 | 5.07500 | 13.79200 | 7.79200 | 2.00000 | 1.00000 | 480 | 478 | 0 |
| 22 | 100,699,953.42 | 7.70300 | 22 | 5.02500 | 13.70300 | 7.70300 | 2.00000 | 1.00000 | 480 | 478 | 0 |
| 23 | 33,841,718.95 | 8.30500 | 34 | 5.06300 | 14.30500 | 8.30500 | 2.99300 | 1.00000 | 360 | 358 | 0 |
| 24 | 1,146,238.16 | 8.91500 | 34 | 5.64900 | 14.91500 | 8.91500 | 3.00000 | 1.00000 | 360 | 358 | 0 |
| 25 | 1,773,821.38 | 7.08400 | 34 | 5.50900 | 13.08400 | 7.08400 | 3.00000 | 1.00000 | 360 | 358 | 0 |
| 26 | 7,847,611.98 | 7.69000 | 34 | 4.99000 | 13.69000 | 7.69000 | 3.00000 | 1.00000 | 360 | 358 | 0 |
| 27 | 5,239,759.70 | 7.36100 | 34 | 4.99000 | 13.36100 | 7.36100 | 3.00000 | 1.00000 | 360 | 358 | 36 |
| 28 | 3,348,101.60 | 6.92200 | 34 | 4.99000 | 12.92200 | 6.92200 | 3.00000 | 1.00000 | 360 | 358 | 36 |
| 29 | 61,383,748.24 | 8.38500 | 34 | 4.99000 | 14.38500 | 8.38500 | 3.00000 | 1.00000 | 480 | 478 | 0 |
| 30 | 3,262,331.76 | 7.64500 | 34 | 5.17400 | 13.64500 | 7.64500 | 3.00000 | 1.00000 | 480 | 478 | 0 |
| 31 | 2,394,121.14 | 7.78100 | 35 | 4.99000 | 13.78100 | 7.78100 | 3.00000 | 1.00000 | 480 | 479 | 0 |
| 32 | 21,046,615.45 | 7.65800 | 34 | 5.03200 | 13.65800 | 7.65800 | 2.98900 | 1.00000 | 480 | 478 | 0 |
| 33 | 24,361,232.67 | 8.62000 | 59 | 5.01800 | 14.62000 | 8.62000 | 3.00000 | 1.00000 | 360 | 359 | 0 |
| 34 | 587,410.92 | 9.50000 | 59 | 4.99000 | 15.50000 | 9.50000 | 3.00000 | 1.00000 | 360 | 359 | 0 |
| 35 | 2,744,265.92 | 7.81100 | 58 | 4.99000 | 13.81100 | 7.81100 | 3.00000 | 1.00000 | 360 | 358 | 0 |
| 36 | 8,109,561.17 | 8.04800 | 59 | 5.13700 | 14.04800 | 8.04800 | 3.00000 | 1.00000 | 360 | 359 | 0 |
| 37 | 696,659.99 | 8.52300 | 59 | 4.99000 | 14.52300 | 8.52300 | 3.00000 | 1.00000 | 360 | 359 | 60 |
| 38 | 340,000.00 | 6.58800 | 59 | 4.99000 | 12.58800 | 6.58800 | 3.00000 | 1.00000 | 360 | 359 | 60 |
| 39 | 1,802,048.00 | 7.63300 | 59 | 4.99000 | 13.63300 | 7.63300 | 3.00000 | 1.00000 | 360 | 359 | 60 |
| 40 | 8,974,904.01 | 7.36000 | 59 | 4.99000 | 13.36000 | 7.36000 | 3.00000 | 1.00000 | 360 | 359 | 60 |
| 41 | 440,581.46 | 7.80000 | 4 | 4.99000 | 13.80000 | 7.80000 | 1.00000 | 1.00000 | 360 | 358 | 0 |
| 42 | 588,386.94 | 9.25000 | 4 | 4.99000 | 15.25000 | 9.25000 | 1.00000 | 1.00000 | 360 | 358 | 0 |

15

**FWP**
http://access.edgar-
online.com/displayfilinginfo.aspx?type=html&filingid=4145240&TabIndex=2&company
id=696804&ppu=%2fprofile.aspx%3fCompanyID%3d696804

1st & 2nd Loan information contained in the FWP dated: 1/24/2006

```
6613444    696935949    COVINGTON              WA            98042
33    SFR      1        11/10/2005    2/1/2006
6613444    1/1/2006    12/1/2035   12/1/2008    1/1/2006    204000
203851.61        7.6         7.6         7.6        13.6
6613444    4.99        80        100             255,000.00
51000        0    PURCHASE            255000    1440.39
6613444   1440.39    360        360         358    OWNER-OCC      1
3/27 LIBOR        2        276    LBMC      Full
6613444   200,000,000,000           0    37           0
3        1        6        7881    N         X
6613444        2        24    11/3/2007    a1            0
589        0        0    A54    AP
6613444   LBMC    20060201   203702.28   YES      Group I    N
YES    20060114   NO        LBMLT 2006-1   011706      AP
```

**10-D**
http://access.edgar-
online.com/displayfilinginfo.aspx?type=html&filingid=5060805&TabIndex=2&company
id=696804&ppu=%2fprofile.aspx%3fCompanyID%3d696804

**8-K**
http://access.edgar-
online.com/displayfilinginfo.aspx?type=html&filingid=4228667&TabIndex=2&company
id=696804&ppu=%2fprofile.aspx%3fCompanyID%3d696804

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# Form 8-K
## Current Report
**Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**
Date of Report   (Date of earliest event reported): **February 7, 2006**
### Long Beach Mortgage Loan Trust 2006-1
(Issuing Entity with respect to the Securities)
### Long Beach Securities Corp.
(Depositor with respect to the Securities)
### Long Beach Mortgage Company
(Sponsor with respect to the Securities)

**10-K**

http://access.edgar-online.com/displayfilinginfo.aspx?type=html&filingid=5060805&TabIndex=2&companyid=696804&ppu=%2fprofile.aspx%3fCompanyID%3d696804

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

-

FORM 10-K

For the fiscal year ended: December 31, 2006

LONG BEACH SECURITIES CORP.
(Exact name of depositor as specified in its charter)

WASHINGTON MUTUAL BANK
(Exact name of sponsor as specified in its charter)

**CONCLUSION**

**Long Beach Mortgage Trust 2006-1** has a cut-off date of **February 01, 2006** after the subject loan's origination date of **November 03, 2005**. Attached are the links where the loans may be found. The entered information is indexed under the loan number **6613444** for both the first note and the second note, which may be found within the subject loan documents.

---

[1] **Form 10-K** is an annual report which provides a comprehensive overview of the company for the past year. The filing is due 90 days after the close of the company's fiscal year, and contains such information as company history, organization, nature of business, equity, holdings, earnings per share, subsidiaries, and other pertinent financial information.

[2] **Form 424B5** is a form of Prospectus that discloses information in the forms **424B2** and **424B3**. **Form 424B2** is a form of Prospectus filed in connection with a primary offering of securities on a delayed basis which includes the public offering price, description of securities and specific method of distribution. **Form 424B3** is a form of Prospectus that reflects facts or events that constitute a substantive change from or in addition to the information set forth in the last form of prospectus filed with the SEC.

[3] **Form 15-15D** is a certification of termination of registration of a class of security under §12(g), or notice of suspension of duty to file reports pursuant to §13 and §15(d) of the Securities Exchange Act. §13 and §15(d) initial filing.

[4] **Form 8-K** is the current report companies must file with the SEC to announce major events that shareholders should know about.



# Certified Forensic Loan Auditor (NAMU®-CFLA)

is hereby granted to

## Laura L. Mathews

to certify that he/she is a member of NAMU® in good standing.

Member #: 1480239

Active Member since: August 3, 2010

_NAMU® Membership Director_

**IMPORTANT LEGAL NOTICE:** NAMU® certifies that you have successfully completed a 32-hour in-person seminar performed by California-Based business-to-business litigation support company. Certified Forensic Loan Auditors, LLC. In addition, NAMU® certifies that you have successfully passed a criminal/sex offender background check and agreed to NOT solicit homeowners directly, unless you are a licensed attorney. This 32-hour seminar is strictly intended to provide professional development "how-to" training, and does not imply any State or Federal Government affiliation. Furthermore, this training does not imply nor encourage trainees to offer foreclosure relief/prevention assistance services directly to homeowners, as it is illegal in many states for loan-modification consultants and businesses to charge up-front fees for their services Additionally, many states now require individuals and businesses offering mortgage-foreclosure consulting, loan-modification and foreclosure-assistance services to post a $100,000 bond. Please note Certified Forensic Loan Auditors, LLC. is exclusively a business-to-business litigation support company, and does NOT work directly with home owners/borrowers in foreclosure. Also, NAMU® is NOT owned or operated by Certified Forensic Loan Auditors, LLC.

# EXHIBIT "D" ATTACHED

# (HEREUNDER)

LONGBEACH MORTGAGE COMPANY )
JP MORGAN CHASE BANK )
             Plaintiff )    Case No
           )    AFFIDAVIT OF LAURA MATHEWS
                Vs )
        )
        )
       Defendant, )
  DAISY D. FIDEL )
  CORAZON A. DIVINE

---

     I, Laura Mathews, of legal age and competent to testify, state as follows based on my own personal knowledge understanding and belief and make this Affidavit/ Declaration based on personal knowledge and state as follows under the penalties of perjury under the laws of the People of the state of Washington:

1. I Laura Mathews am a Certified Forensic Loan Auditor Certified with the National Association of Mortgage Underwriters.

2. I certify that on December 15, 2010 I completed a Forensic audit on the property located at 25311 150TH PL. SE. Covington, WA Loan # 1st 6613444 & 2nd 6613445.

3. Said Forensic Audit is listed in my report entitled Forensic Audit dated 12/15/2010.

4. Said Forensic Audit summarizes the fraud and predatory lending violation within said loan.

5. SUMMARY:
   a. TOTAL TILA VIOLATIONS: 10
   b. TOTAL RESPA VIOLATIONS: 4
   c. TOTAL PREDATORY LENDING VIOLATIONS: 10

6. Daisy Fidel and Corazon Divina purchased the property located at 25311 150th Pl. SE, Covington, WA 98042 on November 03, 2010 for a total purchase price of $255,000.00. The homeowner received a combination 1st and 2nd Note putting the CLTV at 100%.

The 1st Note is a 3/27 stated income program. The note is fixed for the first 3 years and then will begin adjusting every 6 months thereafter. The initial rate is at 7.60% the Margin is 4.990% which is extremely high Lenders typically will set the margin high to insure an upward movement in the rate. The index is a 6 month Libor (a research of the historical rate data at the time of said note put the index at 4.5795%) for a fully index rate of 9.5695%. The minimum rate is 7.60% and the maximum rate is 13.60%. The note is amortized for 30 years with a 2 year prepayment penalty of 3% ($6,120.00) within the first year or 2% ($4,080.00) within the 2nd year.

The 2nd Note is a 30 year fixed rate note with an interest rate of 11.950%.

I have found several violations within the application, the application (1003) is incomplete there are no liabilities, assets, bank account balances or reserves listed, there is no present monthly housing expense listed, (payment shock is more than likely). The application states the property is in Kent, WA however parcel verification has the property in Covington, WA.

The application is dated for 11/7/2005 and also 11/8/2005 said note was dated for 11/3/2005 (4 days before the loan application was signed) and recorded on 11/10/2005. The documents cannot be signed after the effective note date. Also the copies provided have a fax date of 11/2/2005 and 11/3/2005 but were not signed until 11/7/2005 and 11/8/2005.

The signed final application has an interest rate of 7.350% and a 40 year amortization however the note is for 7.6% and a 30 year note.

It appears the application is a stated program, the application also show the income of $4,190.00; $1,200.00 for Corazon A. Divina, $2,340.00 for Daisy Fidel and another $650.00 per month room rent. It is unclear whom the room rent is coming from as the homeowners do not own a rental property. Without this income, the DTI is 59/59%.

The proposed monthly payment is incorrect on the application the actual monthly payment is $1,440.39 on the 1st and $522.64 on the 2nd, taxes and insurance of $313.83 for a Total Monthly Payment of $2,236.86. When using this figure with the income stated on the application the DTI is at 53%/53%.

If we calculate the Fully Index Rate of 9.569% the Total payment is $2,562.09 for a DTI of 61%/61% and at the Maximum Rate of 13.60% the Total Payment is $3,189.17 for a DTI of 76%/76%.

The Credit Score Disclosure documents were missing from Title Company's file, but the Long Beach Mortgage Loan Trust 2006-1's FWP, indicated the borrower's had a mid FICO score of 589.

Made this _15th_ day of _December_, _2010_.


Laura Mathews

_Laura Mathews._

Certified Forensic Loan Auditor

PO Box 99700

Lakewood, WA 98496


## Notary Statement

State of Washington    }
                       }        ss
County of King         }

**BE IT REMEMBERED,** that on the _15th_ day of _December_ 2010, before me, the undersigned, a Notary Public in and for the state of Washington, personally appeared, Laura Mathews who proved to me to be the same individual who executed the within instrument, and, affirmed that she is personally fully aware of the contents and accuracy of the statements made therein, and affirms that the document is, to the very best of her knowledge, true and correct.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed My Official seal the day and year last above written.

_____

Notary Public for _Washington_

Commission Expires on _7/10/12_

DJ WILSON
COMMISSION EXPIRES
NOTARY
PUBLIC
JULY 10, 2012
STATE OF WASHINGTON

**Prepared for:**

## John Sterbick – Attorney

**Borrower(s):**

**Daisy Fidel**
**Corazon A. Divina**

**Property:**
**25311 150th Place SE**
**Covington, WA  98042-5228**





# FORENSIC AUDIT
# REPORT
Daisy Fidel and Corazon A. Divina

**Laura Mathews**
**12/15/2010**

# Certified Forensic Loan Auditor (NAMU®-CFLA)

is hereby granted to

## Laura L. Mathews

to certify that he/she is a member of NAMU® in good standing.



Member #: 1480239
Active Member since: August 3, 2010

NAMU® Membership Director

**IMPORTANT LEGAL NOTICE:** NAMU® certifies that you have successfully completed a 32-hour in-person seminar performed by California-Based business-to-business litigation support company. Certified Forensic Loan Auditors, LLC. In addition, NAMU® certifies that you have successfully passed a criminal/sex offender background check and agreed to NOT solicit homeowners directly, unless you are a licensed attorney. This 32-hour seminar is strictly intended to provide professional development "how-to" training, and does not imply any State or Federal Government affiliation. Furthermore, this training does not imply nor encourage trainees to offer foreclosure relief/prevention assistance services directly to homeowners, as it is illegal in many states for loan-modification consultants and businesses to change up-front fees for their services. Additionally, many states now require individuals and businesses offering mortgage-foreclosure consulting, loan-modification and foreclosure-assistance services to post a $100,000 bond. Please note Certified Forensic Loan Auditors, LLC. is exclusively a business-to-business litigation support company, and does NOT work directly with home owners/borrowers in foreclosure. Also, NAMU® is NOT owned or operated by Certified Forensic Loan Auditors, LLC.

# TABLE OF CONTENTS

Advisory Letter _____

Introduction_____

Report Summary _____

Summary of Loan Terms_____

Financial & Underwriting Analysis_____

Truth in Lending Act Analysis _____

HOEPA Analysis _____

RESPA Analysis _____

Predatory Indicators _____

Potential Additional Claims Analysis _____

       Discrimination

       Fraud

       Foreign Language Translation

       Breach of Contract

       Breach of Implied Covenant of Fair Dealing

       Breach of Fiduciary Duty

       Unjust Enrichment

       Unconscionability

       Civil Conspiracy

       Unfair/Deceptive Business Practices

Other Claims & Recommended Legal Research _____

John Sterbick
1010 South "I" Street
Tacoma, WA 98405
(253) 383-0140

RE:     Forensic Audit for John Sterbick

       Loan# 1st 6613444
       Loan# 2nd 6613445

Dear Audit Recipient:

The loan transaction for the above-referenced borrower/property has been manually audited [1] for violations of the Truth in Lending Act [16 U.S.C. §1601] ("TILA"), Home Ownership Equity Protection Act [12 C.F.R. 226.32 *et seq.*] ("HOEPA"), the Real Estate Settlement Procedures Act [12 U.S.C. § 2601] ("RESPA"), and to the extent applicable, violations of other state and federal laws discussed below.

This report was based exclusively on the documentation provided. It was also required that we make reasonable assumptions respecting disclosures and certain loan terms that, if erroneous, may result in material differences between our findings and the loan's actual compliance with applicable regulatory requirements. While we believe that our assumptions provided a reasonable basis for the review results, we make no representations or warranties respecting the appropriateness of our assumptions, the completeness of the information considered, or the accuracy of the findings.

The contents of this report are being provided with the understanding that we are not providing legal advice, nor do we have any relationship, contractual or otherwise, with anyone other than the recipient. We do not, in providing this report, accept or assume responsibility for any other purpose.

Sincerely,

*[signature]*

**Laura Mathews**

---

[1] Please note that a complete mortgage servicing audit (i.e., audit for RESPA and/or breach of contract violations for the entire servicing history of the loan) is not included in this audit; QWR recommended before such audit and be accomplished.

## INTRODUCTION

### Interested Parties:

| ORIGINAL MORTGAGE LENDER/TABLE FUNDER: | ESCROW/TITLE: | MORTGAGE NOMINEE/BENEFICIARY: |
|---|---|---|
| Long Beach Mortgage Co. 1400 S Douglas Rd., #100 Anaheim, CA 92806 | Old Republic Title, LTD 2201 – 6th Ave., #1110 Seattle, WA 98121 Chicago Title Insurance Company 25688 104th Ave. SE Kent, WA 98031 | Long Beach Mortgage Co. 1400 S Douglas Rd., #100 Anaheim, CA 92806 |
| **MORTGAGE BROKER:** | **MORTGAGE TRUSTEE** | **SECURITIZATION** |
| Pacific Northwest Mortgage Company 15410 Ambaum Blvd. SW Burien, WA 98166 | Chicago Title Insurance Company 25668 104th Avenue SE Kent, WA 98031 | Long Beach Mortgage Loan Trust 2006-1 |

### Documents Provided for Review:

| 1st | 2nd | |
|---|---|---|
| X | X | Loan Application (1003) |
| | | Loan Commitment Letter MISSING 1st, MISSING 2nd |
| | | Good Faith Estimate MISSING 1st, MISSING 2nd |
| X | X | Truth in Lending Disclosure Statement |
| N/A | N/A | (3-day) Notice of Right to Cancel (PURCHASE) |
| X | X | HUD-1 (or HUD-1 A) Settlement Statement |
| X | X | Note (with riders or attachments |
| X | X | Deed of Trust |
| | | Underwriting and Transmittal Summary (Form 1008) MISSING 1ST, MISSING 2ND |
| | | Appraisal Report MISSING 1ST, MISSING 2ND |
| X | X | RESPA Servicing disclosure |
| | | Hazard Insurance disclosure MISSING 1ST, MISSING 2ND |
| | | Credit score disclosure MISSING 1ST, MISSING 2ND |
| X | X | Lenders Closing Instructions |
| X | X | Affiliated Business Arrangement Disclosure |
| N/A | | I/O and/or Neg-Am disclosure |
| X | N/A | Arm Disclosure |

## REPORT SUMMARY

Total Potential TILA Violations (see p. 10): **10**

Total Potential HOEPA Violations (see p. 12): **0**

Total Potential RESPA Violations (see p. 13): **4**

Total Predatory Lending Violations: (see p. 14): **10**

| CLAIM | CONCLUSION | DETAILS |
|---|---|---|
| Underwriting | FAIL | See p. 8 |
| TILA APR Tolerance Test | FAIL | See pp. 10-11 |
| TILA Finance Charge Test | FAIL | See pp. 10-11 |
| TILA Right of Rescission | N/A | See pp. 10-11 |
| Predatory Indicators | FAIL | See p. 14 |
| Discrimination* | FAIL | See discussion at p. 17 |
| Civil Code § 1632* | N/A CALIFORNIA | |
| Fraud* | FAIL | See discussion at p. 18 |
| Other State/Common Law Claims* | POSSIBLE | See discussion at p. 18 |

*(Probability of Violations Ratings: No Evidence or Possible)

**AUDITORS SUMMARY:**

Daisy Fidel and Corazon Divina purchased the property located at 25311 150th Pl. SE, Covington, WA 98042 on November 03, 2010 for a total purchase price of $255,000.00.  The homeowner received a combination 1st and 2nd Note putting the CLTV at 100%.

The 1st Note is a 3/27 stated income program.  The note is fixed for the first 3 years and then will begin adjusting every 6 months thereafter.   The initial rate is at 7.60% the Margin is 4.990% which is extremely high Lenders typically will set the margin high to insure an upward movement in the rate.  The index is a 6 month Libor (a research of the historical rate data at the time of said note put the index at 4.5795%) for a fully index rate of 9.5695%.  The minimum rate is 7.60% and the maximum rate is 13.60%.  The note is amortized for 30 years with a 2 year prepayment penalty of 3% ($6,120.00) within the first year or 2% ($4,080.00) within the 2nd year.

The 2nd Note is a 30 year fixed rate note with an interest rate of 11.950%.

I have found several violations within the application, the application (1003) is incomplete there are no liabilities, assets, bank account balances or reserves listed, there is no present

monthly housing expense listed, (payment shock is more than likely).  The application states the property is in Kent, WA however parcel verification has the property in Covington, WA.

The application is dated for 11/7/2005 and also 11/8/2005 said note was dated for 11/3/2005 (4 days before the loan application was signed) and recorded on 11/10/2005.  The documents cannot be signed after the effective note date.  Also the copies provided have a fax date of 11/2/2005 and 11/3/2005 but were not signed until 11/7/2005 and 11/8/2005.

The signed final application has an interest rate of 7.350% and a 40 year amortization however the note is for 7.6% and a 30 year note.

It appears the application is a stated program, the application also show the income of $4,190.00; $1,200.00 for Corazon A. Divina, $2,340.00 for Daisy Fidel and another $650.00 per month room rent.   It is unclear whom the room rent is coming from as the homeowners do not own a rental property.  Without this income, the DTI is 59/59%.

The proposed monthly payment is incorrect on the application the actual monthly payment is $1,440.39 on the 1st and $522.64 on the 2nd, taxes and insurance of $313.83 for a Total Monthly Payment of $2,236.86.  When using this figure with the income stated on the application the DTI is at 53%/53%.

If we calculate the Fully Index Rate of 9.569% the Total payment is $2,562.09 for a DTI of 61%/61% and at the Maximum Rate of 13.60% the Total Payment is $3,189.17 for a DTI of 76%/76%.

The Credit Score Disclosure documents were missing from Title Company's file, but the Long Beach Mortgage Loan Trust 2006-1's FWP, indicated the borrower's had a mid FICO score of 589.

## SUMMARY OF LOAN TERMS

The **essential loan terms** were found to be as follows:

| | |
|---|---|
| Type of Loan: | **PURCHASE** |
| Loan Origination Date: | **11/03/2005** |
| Amount of Loans: | **$204,000.00 / $51,000.00** |
| Originating Lender: | **LONG BEACH MORTGAGE COMPANY** |
| Loan Broker: | **PACIFIC NORTHWEST MORTGAGE INC.** |
| Current Servicer: | **JP Morgan Chase Bank, National Association** |
| Current Note Holder: | **Long Beach Mortgage Loan Trust 2006-1** |
| 1st Note (ARM) Terms: | |
| Initial Fixed Rate: | **7.600%** |
| Term of Initial Rate: | **3 YEARS** |
| Initial Payment: | **$1,440.39** |
| Payment Feature: | **3/27 Adjustable Rate Note** |
| Index Measure: | **6 MONTH LIBOR** |
| Index Rate: | **4.579%** |
| Margin: | **4.990%** |
| Fully Indexed Rate: | **9.5695%** |
| Min/Max Rate: | **7.600%/13.600%** |
| TILA disclosed APR: | **9.321%** |
| Total Closing Costs: | **$11,333.72** |
| Total "Points and Fees"% | **5.555%** |
| Prepayment Penalty: | **2 YEAR** |
| Unsecured Debt Paid off by Refinance: | **N/A** |
| Loan Origination Fees: | **$4,160.00** |
| Loan Discount Fees: | **0** |
| Total Broker Fees: | **$5,335.00/2.615%** |
| 2nd Note (Fixed) Terms: | |
| Fixed Rate: | **11.950% ($51,000.00)** |
| Term of Loan: | **30 YEARS** |
| Payment Feature: | **FIXED** |
| TILA disclosed APR: | **12.183%** |
| Total Closing Costs: | **$862.40/1.691%** |

## FINANCIAL & UNDERWRITING ANALYSIS

**Underwriting Standards**

The purpose of an underwriter is to determine whether the borrowers can qualify for a loan and if the borrowers have the ability to repay the loan. This determination of the ability to repay a loan is based upon employment and income in large measure, which is proved by getting pay stubs, 1040's, W-2's, and a Verification of Employment and Income on the borrowers.

If an underwriter has evaluated the loan properly, then there should be no question of the ability of the borrower to repay the loan. Debt ratios will have been evaluated, credit reviewed and a proper determination of risk made in relation to the loan amount. Approvals and denials would be made based upon a realistic likelihood of repayment.

**Automated Underwriting Systems**

The underwriter's role in approving loans has been delegated to a support role in the past decade. Automated Underwriting Systems became the normal approval method. An underwriter or even a loan officer would simply input the data and the Automated System would give an approval or denial. Any documents requested would be gathered and then loan documents drawn and signed.

The real issue with the automated systems is that they were not designed to be the "final word" in approval. The system approval was designed to be a guide, a preliminary approval and nothing more. After approval was received, the underwriter would then be expected to extensively review the file, closely examining the documents for final approval.

**DISSUSSION:**   Borrower's financial status at the time of the loan is taken from the loan application. An analysis of borrower's financial status at the time of the loan reveals the following: The Following figures are based on the information from the Loan Application and have not been verified.

| Gross Monthly Income | Mortgage Payment (PITI) | Other Monthly Debt | Total Monthly Debt | Debt-to-Income ratio |
|---|---|---|---|---|
| $4,190.00 | $2,082.54 | 0 | $2,082.54 | 50/50% |

**CONCLUSION:** Normal underwriting practices include analysis for a 28/36% debt-to-income ratio. During 2003 to 2006, subprime lending involved higher DTI ratios, from 33/38% to 38/50%. **The application (1003) is incomplete there are no liabilities, assets, bank account balances or reserves listed, there is no present monthly housing expense listed, (payment shock is more than likely).**

The application is dated for 11/7/2005 and also 11/8/2005 said note was dated for 11/3/2005 and recorded on 11/10/2005.  The documents cannot be signed after the effective note date. Also the copies provided have a fax date of 11/2/2005 and 11/3/2005 but were not signed until 11/7/2005 and 11/8/2005.

The signed final application has an interest rate of 7.350% and a 40 year amortization however the note is for 7.6% and a 30 year note.

It appears the application is a stated program, the application also show the income of $4,190.00; $1,200.00 for Corazon A. Divina, $2,340.00 for Daisy Fidel and another $650.00 per month room rent.  It is unclear whom the room rent is coming from as the homeowners do not own a rental property.  Without this income, the DTI is 59/59%.

The proposed monthly payment is incorrect on the application the actual monthly payment is $1,440.39 on the 1st and $522.64 on the 2nd, taxes and insurance of $313.83 for a Total Monthly Payment of $2,236.86.  When using this figure with the income stated on the application the DTI is at 53%/53%.

If we calculate the Fully Index Rate of 9.569% the Total payment is $2,562.09 for a DTI of 61%/61% and at the Maximum Rate of 13.60% the Total Payment is $3,189.17 for a DTI of 76%/76%.

The homeowner was set up from the beginning of the transaction for default.  The lender knew it would be just a matter of time before the homeowner would default and they would receive possession of the asset.

I was unable to review the credit report, income or employment documentation to verify the debt/income ratios.

The purpose of an underwriter is to determine whether the borrowers can qualify for a loan and if the borrowers have the ability to repay the loan. This determination of the ability to repay a loan is based upon employment and income in large measure, which is proved by getting pay stubs, W-2's and a Verification of Employment and Income on the borrowers.  If an underwriter has evaluated the loan properly, then there should be no question of the ability of the borrower to repay the loan.  Debt ratios will have been evaluated, credit reviewed and a proper determination of risk made in relation to the loan amount.  Approvals and denials would be made based upon a realistic likelihood of repayment.

**Risk layering is the concept of borrowers having multiple elements of risk in any one loan. Risk would be greater as the different factors that lenders should be concerned about were found in each loan.  The more layers of risk, the greater the likelihood of default.  Layers of risk in this loan include................**

1. Stated income

2. Equity Stripping

3. High Debt to income Ratios

4. Discounted Rate

5. Prepayment Penalty

6. Lack of due diligence in underwriting

7. ARM loan

8. Excess Fees/Charges

9. Yield Spread Premium

10. High LTV

11. Payment Shock

12. Less than adequate reserves verified

13. High Margin

## TRUTH IN LENDING ACT ANALYSIS

**APPLICATION:** The TILA applies because the transaction involves the extension of credit to a consumer for personal, family or household purposes that is subject to a finance charge and/or payable by written agreement in more than four installments. 15 U.S.C. §§ 1601-1666j.

| Pass | Fail | | | |
|------|------|---|---|---|
| N/A | | Notice of Right to Cancel (2 copies per borrower; filled out completely). 12 C.F.R. § 226.23(b). | | |
| X | | TIL Disclosure Statement provided. 12 C.F.R. §§226.17, 226.18 | | |
| | X | Payment Schedule correctly identified on TIL. 12 C.F.R. §§226.18(g).(h). ARM | | |
| | X | Interest Rate consistent and properly disclosed: Loan app-GFE-Commitment-TIL, variable rate. 12 C.F.R. § 226.17-18. MISSING GFE, LOAN COMMITMENT | | |
| | X | Delivered good faith estimates of disclosures (preliminary TILDS) within 3 days of loan application. 12 C.F.R. §§ 226.19(a). MISSING GFE | | |
| | X | "Consumer Handbook on Adjustable Rate Mortgages" (CHARM) provided within 3 days of application. [Or equivalent disclosure – see 12 C.F.R. § 226.19(b)]. MISSING | | |
| X | | Interest-only payment feature adequately disclosed 15 U.S.C. §§ 1638, 12 C.F.R. § 226.17-18. | | |
| N/A | | Negative-amortization payment feature adequately disclosed. 15 U.S.C. §§ 1638, C.F.R. § 226.17-18. | | |
| | X | Itemization of amount financed. C.F.R. § 226.18. 1ST GFE MISSING, 2ND GFE MISSING | | |
| | X | Property/Hazard Insurance disclosure provided (choice by consumer). C.F.R. § 226.4(d) (2). MISSING | | |
| | X | Prepayment Penalty disclosed. C.F.R. § 226.18(k).  2 YEAR PREPAYMENT PENALTY | | |
| | X | **APR Calculation**<br><br>See Note 1 below for further discussion. | 1st Lien Result<br>Disclosed: **9.321%**<br>Vs.<br>Actual: **9.491%**<br>Difference= **≤.170%** ≥ | 2nd Lien Result<br>Disclosed: **12.183%**<br>Vs.<br>Actual: **12.117%**<br>Difference = **≤.066%** ≥ |
| | X | **Amount Financed Calculation**<br><br>See Note 2 below for further discussion. | 1st Lien Result<br>Disclosed: **$401,525.28**<br>Vs.<br>Actual: **$411,952.38**<br>Difference=≤**$10,427.10**≥ | 2nd Lien Result<br>Disclosed: **$138,026.40**<br>Vs.<br>Actual: **$137,779.78**<br>Difference = ≤**$246.62**≥ |
| | X | All disclosures accurately reflect the legal obligation between the parties; 15 U.S.C. §§ 1638, 12 C.F.R. § 226.17©. | | |

*Total Potential TILA Violations: 10*

**FURTHER RECOMMENDATIONS:**

**POTENTIAL REMEDIES FOR VIOLATIONS:** Where a material disclosure was not given or inaccurate (APR, finance, amount financed, payment schedule, or total of payments), or consumer was not provided with proper notice of right to cancel, the right of rescission is extended to 3 years.  Statutory (up to $2,000) and actual damages, as well as attorney's fees, may also be available for the violations noted.

## TILA NOTATIONS

Under the Truth in Lending Act ("TILA"). Rescission rights arise when: (1) the transaction is a consumer credit transaction; (2) in which a non-purchase lien or security interest is or will be placed; and (3) on the consumer's principal dwelling. In a rescindable transaction, each consumer must be given a copy of the TILA disclosure statement withal "material" information correctly disclosed and notice of a three-day right to rescind. If these material disclosures are not properly provided, the three-day right to rescind is extended until one of the following events occurs: (1) all materials disclosures are correctly given and a new three day notice of cancellation, (2) the expiration of three years after consummation of the transaction; (3) the transfer of all of the consumer's interest in the property; or (4) the sale of the property. All persons entitled to rescind under TILA must receive two copies of the rescission notice rights and on copy of the material disclosures at or before closing. The notice of rescission must provide the following information: (1) the retention or the acquisition of a security interest in the consumer's principle dwelling; (2) the consumer's right to rescind; (3) how to exercise the right to rescind with a form for that purpose, designating the address of the creditor's place of business; (4) the effects of rescission; and (5) the date the rescission period expires.

1. **Annual Percentage Rate Tolerances and Right of Rescission**

An APR deviation is a material violation permitting the right of rescission if: (a) it was a refinance, (b) within 3 years of the transaction, and (c) outside the tolerances set forth below.

12 CFR § 226.22(a)(2) provides: "As a general rule, the annual percentage rate shall be considered accurate if it is not more than 1/8 of 1 (.125%) percentage point above or below the annual percentage rate determined in accordance with paragraph (a)(1) of this section." Under 12 CFR 226.22 (a)(3): "In an irregular transaction, the annual percentage rate shall be considered accurate if it is not more than 1/4 of 1 (.25%) percentage point above or below the annual percentage rate determined in accordance with paragraph (a)(1) of this section."

2. **Finance Charge Tolerances and Right of Rescission**

12 CFR § 226.18(d) requires the disclosure of the finance charge amount. For purposes of "mortgage loans" 12 CFR § 226.18(d)(1) provides: "In a transaction secured by real property or a dwelling, the disclosed finance charge and other disclosures affected by the disclosed finance charge (including the amount financed and the annual percentage rate) shall be treated as accurate if the amount disclosed as the finance charge: (I) is understated by no more than $100; or (ii) is greater than the amount required to be disclosed." Statutory and actual damages are available for this violation.

A finance charge deviation is a material violation permitting the right of rescission if: (a) it was a refinance, (b) within 3 years of the transaction, and (c) outside the tolerances set forth below.

12 CFR § 226.23(g) provides: "Tolerances for accuracy.—(1) One-half of 1 percent tolerance. Except as provided in paragraphs (g)(2) and (h)(2) of this section, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge: (I) is understated by no more than ½ of 1 percent of the face amount of the note or $100, whichever is greater; or (ii) is greater than the amount required to be disclosed. (2) One percent tolerance. In a refinancing of a residential mortgage transaction with a new creditor (other than a transaction covered by § 226.32), if there is no new advance and no consolidation of existing loans, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge: (I) is understated by no more than 1 percent of the face amount of the note or $100, whichever is greater; or (ii) is greater than the amount required to be disclosed."

15 U.S.C. § 1635 (I) also provides: "Rescission Rights In Foreclosure. – (2) Tolerance for Disclosures. – Notwithstanding section 106(f), and subject to the time period provided in subsection (f), for the purposes of exercising any rescission rights after the initiation of any judicial or non judicial foreclosure process on the principal dwelling of the obligor securing an extension of credit, The disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $35 or is greater than the amount required to be disclosed under this title."

# HOEPA ANAYLSIS

<u>APPLICATION:</u>  Neither statute like applies as the estimated APR [~xx] would not exceed 8% over the comparable yield on treasury securities [~10], nor do the "total points and fees" exceed 8% or 6%, respectively, of the loan amount.  **NOT A HOEPA LOAN**

| Pass | Fail | |
|------|------|---|
| | | APR disclosed. 12 CFR 226.32(c)(2) |
| | | 3 days prior to closing, the APR and disclosure statement similar to the following: "You are not required to complete..." (HOEPA). |
| | | 3 day prior to closing, disclosure: "CONSUMER CAUTION AND HOME OWNERSHIP CONSELING NOTICE..." |
| | | Disclosed the amount of the borrower's regular monthly payment.  12 CFR 226.32(c)(3). |
| | | If variable, includes a statement that the interest rate and monthly payment may increase and the maximum payment that could be reached.  12 CFR 226.32(c) (4). |
| | | No balloon payments prior to ten years.  12 CFR 226.32(d) (1) (I)-(iii). |
| | | Disclosed amount of any balloon payment 12 CFR 226.32 (c) (3). |
| | | No prepayment penalty after first 5 years, source of funds is not refinance by creditor, and consumers total monthly is no more than 50% of DTI. 12 CFR 226.32(d) (7). |
| | | No increase in the interest rate in the event of default. 12 CFR 226.32(D) (4). |
| | | No negative amortization. 12 CFR 226.32(d) (2). |
| | | No refinance within one year. 12 CFR 226.34 |
| | | No prepaid payments. 12 CFR 226.321(d) (3). |
| | | Engaging in a pattern or practice of extending such credit to a borrower based on the borrower's collateral rather than considering the borrower's current and expected income, current obligations, and employment status to determine whether the borrower is able to make the scheduled payments to repay the obligation, is in violation of Section 129(h) of TILA, 15 U.S.C. § 1639(h), and see also, Regulation Z, 12 C.F.R. § 226.32. |
| | | If refinance transaction, disclosed total amount borrowed and if the loan amount includes premiums or other charges for optional credit insurance or debt cancellation coverage, that fact shall be stated. 12 CFR 226.32(c) (5). |

*Total Potential HOEPA Violations:*

<u>POTENTIAL REMEDIES FOR VIOLATIONS:</u>  All TILA remedies, plus all finance charges and fees if "material" violation, pursuant to 15 U.S.C. § 1640(a) (4).

## REAL ESTATE SETTLEMENT PROCEDURES ACT ANALYSIS

**APPLICATION:** The RESPA applies because lender regularly extends federally related mortgage loans aggregating more than $1 million per year, and intended for the purchase of a one- to four-family residential property. 12 U.S.C. §§ 2601.2617.

| Pass | Fail | |
|------|------|---|
| X | | Informed borrower of intention to transfer the servicing of the loan and/or failed to inform the borrower of the actual transfer within fifteen (15) days before the effective date of the transfer. 24 CFR § 3500.21. |
| X | | Did not require deposit of funds in escrow in excess of the statutorily permitted amounts. 24 CFR § 3500.17 |
| | X | Purchase Money: Provided the Special Information Booklet explaining the settlement costs within three (3) business days after consumer submitted loan application. 24 CFR § 3500.6  NO EVIDENCE IN FILE |
| X | | No fees charged for preparation of the settlement statement, escrow account statement, and/or the TILA disclosure statement. 24 CFR § 3500.12. |
| | X | Disclosed all affiliated business arrangements. 24 CFR § 3500.15. MISSING |
| | X | Did not give, provide or receive a hidden fee or thing of value for the referral of settlement business, including but not limited to, kickbacks, hidden referral fees, and/or yield spread premiums. 24 CFR § 3500.14. BROKER FEES COMBINED AS ONE YSP MORE THAN LIKELY |
| TBD | | Properly and timely paid for property taxes, insurance and other charges for which Defendants are collecting within an escrow impound account; or other servicing violations. 24 CFR § 3500.17. |
| X | | HUD-1 provided at closing (1 day before if requested) and accurate. 24 CFR § 3500.8(b) |
| | X | No fees charged in excess of the reasonable value of goods provided and/or services rendered. BROKER FEES |
| TBD | | Purchase Money: Seller did not impose use of particular service provider. 24 CFR § 3500.16 |

*Total Potential RESPA Violations: 4*

**FURTHER RECOMMENDATIONS:** QWR/discovery re mortgage servicing for potential servicing violations or breach of contract.

**POTENTIAL REMEDIES FOR VIOLATIONS:** Actual damages, statutory (up to $1000 if show pattern and practice), and treble damages for excessive portion of fees (below), plus attorney's fees and costs for violations noted.

The following are **suspect or excessive closing costs/fees** that may be actionable for treble damages pursuant to 12 U.S.C. § 2607: **BOKER FEE $4,160.00, BROKER PROCESSING FEE $500.00, BROKER APPLICATION FEE $275.00, BROKER UNDERWRITING FEE $500.00, Doc Prep Fee to Old Republic for Deed $326.40**

## PREDATORY LOAN INDICATORS

"Predatory lending" is a general term used to describe unfair, deceptive, or fraudulent practices of lenders during the loan origination process.  Predatory lending is often a combination of several factors that can only be evaluated in the context of the overall lending transaction. Typically, no single factor can be relied upon to consider it a predatory loan.

A large number of agencies and consumer organizations recognize predatory lending, including, for example, the Department of Housing and Urban Development, federal Deposit Insurance Corporation, National Consumer Law Center, California Department of Real Estate, Fannie Mae, National Association of Consumer Advocates, Association of Community Organizations for Reform Now, National Home Equity Mortgage Association, and Center for Responsible Lending.

The Predatory lending factors present in the subject transaction were found to be as follows:

| Pass | Fail | |
|---|---|---|
| N/A | | Solicitation for refinance. |
| | X | Mortgage broker and corresponding lender involved. |
| TBD | | Borrower was a minority and/or the transaction was conducted in a foreign language. |
| | X | Loan-to-value ratio above 80%. 1ST 80%/2ND 20% /CLTV 100% |
| | X | Debt-to-income ratio above 28/36%.  50/50% |
| | X | Teaser rate involved.  1ST 3 YEAR FIXED/27 YEAR ADJUSTABLE LIBOR NOTE |
| | X | Interest rate on 1st was more than 2 points above: 6.08% (2.77 margin) [average US 5/1 ARM rate] or 6.4% [average 30-year fixed]. (Source: Freddie Mac 1/2003-12/2006). 9.5695% FULLY INDEXED RATE |
| | X | Excessive closing Costs/Fees. |
| | X | Prepayment Penalty.  2 YEARS |
| X | | Interest-Only Payments. |
| X | | Negative Amortization Payments. |
| | X | Broker Compensation ≥ 2% (including yield spread premium). 2.615% |
| N/A | | Loan Flipping – refinance within 3 years of previous loan. |
| X | | Balloon payments. |
| X | | Unsecured Debt Shifted to Secured (i.e., credit cards). |
| TBD | | Unnecessary insurance and other products offered in closing. |
| N/A | | Mandatory arbitration clause in Note. |
| | X | Bait & Switch – e.g., borrower initially offered lower rate than final Note. INITIAL 1003 1ST NOTE WAS 7.350%, 1ST NOTE WAS 7.60% |
| | X | Other unfair, deceptive, or fraudulent practices in transaction. |

***Total Predatory Indicators: 10***

## PREDATORY LOAN ANALYSIS

**Predatory Lending**

The terms "abusive lending" or "predatory lending" are most frequently defined by reference to a variety of lending practices. Although it is generally necessary to consider the totality of the circumstances to assess whether a loan is predatory, *a fundamental characteristic of predatory lending is the aggressive marketing of credit to prospective borrowers who simply cannot afford the credit on the terms being offered.*

While such disregard of basic principles of loan underwriting lies at the heart of predatory lending, a variety of other practices may also accompany the marketing of such credit, Some Predatory Lending Practices found in this loan

*Bait & Switch*
**The practice of offering a loan at one rate and then changing the loan program at the last moment.  It can also apply to the negative amortization loan.**

*Elder Abuse*
**The practice of targeting the elderly with loans that they cannot afford, or negative amortization loans with low minimum payments, but high actual interest rates, simply for getting the commissions on the loan.**

*Targeting*
**Targeting inappropriate or excessively expensive credit products to older borrowers, to persons who are not financially sophisticated or who may be otherwise vulnerable to abusive practices, and to persons who could not qualify for mainstream credit products and terms.**

*Non-English Speaking Borrowers*
**Persons who don't speak or read English and all the conversations are held in either English or their native language.  Borrowers cannot understand the loan documents and have no idea what they are signing.**

*Excessive Fees and Rates*
**Requires borrowers to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.**

*High Debt Ratios*
**This is the practice of approving loans with high debt ratios, usually 50% or more, without determining the true ability of the borrower to repay the loan.  Can often be seen with Prime borrowers approved through the Automated Underwriting Systems.**

*High Loan to Value Loans*

Loans offered to a borrower having little of no equity in the home. Usually adjustable rate mortgages that the borrower will not be able to refinance out of when the rate adjusts due to lack of equity.

### *Fraudulently Caused to Execute Loan Documents*
Adjustable rate mortgage loan was an inter-temporal transaction on which Plaintiffs had only qualified at the initial teaser fixed rate, and could not qualify for the loan once the interest rate terms changed in two years.

### *Deception, Fraud, Unconscionable*
Is marketed in a way that fails to fully disclose all material terms. Includes any terms or provisions which are unfair, fraudulent or unconscionable. Is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact. Includes interest only loans, adjustable rate loans, and negative amortization and HOEPA loans.

### *Stated or No Income/No Assets*
Is based on a loan application that is inappropriate for the borrower. For instance, the use of a stated-income loan application from an employed individual who has or can obtain pay stubs W-2 forms and tax returns.

### *Lack of Due Diligence in Underwriting*
Is underwritten without due diligence by the party originating the loan. No realistic means test for determining the ability to repay the loan. Lack of documentation of income or assets, job verification. Usually with Stated Income or No documentation loans, but can apply to full documentation loans.

### *Inappropriate Loan Programs*
Is materially more expensive in terms of fees, charges and/or interest rates than alternative financing for which the borrower qualifies. Can include prime borrowers who are placed into subprime loans, negative or interest only loans. Loan terms whereby the borrower can never realistically repay the loan.


## DISCUSSION: Summary of Underwriting Decision by Auditor

The Auditor has reviewed the approval process of this loan. I find that the underwriting process was flawed in that it did not take into consideration the ability of the borrower to repay this loan with a realistic means test. The borrower signed a 4506-T Income Tax Disclosure form and an IRS form 8821. These forms allow the lender to check the income of the borrower. Failure to do so was a lack of due diligence on the part of the lender regarding underwriting standards and the ability to repay the loan, based on the loan program the lender would have to decline the loan. (Other areas of applicability regarding the 4506-T could be considered breach of the lender's contractual duty to conduct the transaction on good faith and through fair dealing: gross negligence or breach of fiduciary duty as a licensed professional under their lending license if applicable).

### POTENTIAL ADDITIONAL CLAIMS ANALYSIS
(Probability of Violations Ratings: No Evidence or Possible)
**Note: Federal laws may preempt certain state claims.**

---

**Equal Credit Opportunity Act (discrimination) -**                                    *No Evidence*

---

The Equal Credit Opportunity Act provides at Sec.202.1 – Authority, scope, purpose:

> (b) Purpose.  The purpose of this regulation is to promote the availability of credit to all
> Creditworthy applicants without regard to race, color, religion, national origin, sex,
> Marital status, or age (provided the applicant has the capacity to contract); to the fact that
> All or part of the applicant's income derives from a public assistance program; or to the
> Fact that the applicant has in good faith exercised any right under the Consumer Credit
> Protection Act.  The regulation prohibits creditor practices that discriminate on the basis
> Of any of these factors.  The regulation also requires creditors to notify applicants of
> Action taken on their applications; to report credit history in the names of both spouses on
> An account; to retain records of credit applications; to collect information about the
> Applicant's race and other personal characteristics in applications for certain dwelling-
> Related loans; and to provide applicants with copies of appraisal reports used in
> Connection with credit transactions.

Additionally, at Sec. 202.4 – General Rule Prohibiting Discrimination:

> 1.  Scope of section.  The general rule stated in Sec.202.4 covers all dealings, without
> Exception, between an applicant and a creditor, whether or not addressed by other
> Provisions of the regulation.  Other sections of the regulation identify specific practices
> That the Board has decided are impermissible because they could result in credit
> Discrimination on a basis prohibited by the act.  The general rule covers, for example,
> Application procedures, criteria used to evaluate creditworthiness, administration of
> Accounts and treatment of delinquent or slow accounts.  Thus, whether or not specifically
> Prohibited elsewhere in the regulation, a credit practice that treats applicants differently
> On a prohibited basis violates the law because it violates the general rule.  Disparate
> *Treatment on a prohibited basis is illegal whether or not it results from a conscious intent*
> *To discriminate.*  Disparate treatment would be found, for example, where a creditor
> Requires a minority applicant to provide greater documentation to obtain a loan than a
> Similarly situated nonminority applicant.  Disparate treatment also would be found where
> A creditor waives of relaxes credit standards for a nonminority applicant but not for a
> Similarly situated minority applicant.  Treating applicants differently on a prohibited basis
> Is unlawful if the creditor lacks a legitimate nondiscriminatory reason for its action, or if
> The asserted reason is found to be a pretext for discrimination.

**DISCUSSION: No direct evidence of discrimination, but the loan terms offered by this lender
may be less than favorable: recommend investigation into borrowers credit, income etc.**
**Fraud -**                                                                        *Possible*

---

Liability for actual fraud is limited to acts committed by or with the connivance of a party to a contract
With the intent to deceive another party to the contract and induce that party to enter into the contract
Provides that:

> (a)  A party to a contract may rescind the contract in the following cases:

> (1)  If the consent of the party rescinding, or of any party jointly contracting with him, was given by

18

Mistake or obtained through duress, menace, fraud, or undue influence, exercised by or with the
Connivance or the party as to whom he rescinds, or of any other party to the contract jointly interested
With such party.

**DISCUSSION:** It appears the lender approved the loan based on STATED income and no assets
verification.  The lender has a fiduciary responsibility to the borrower to perform their due
diligence before extending credit.  However, the lender did NOT perform their due diligence
by confirming the borrower's ability to make his monthly payments over the lifetime of the
loan.  Recommend investigation into the loan programs presented to the borrower from the
beginning of the transaction.

**Fraud in the factum**
**Fraud in the Factum is a type of fraud where misrepresentation causes one to enter a**
**transaction without accurately realizing the risks, duties, or obligations incurred.  Black's**
**Law Dictionary (2nd Pocket ed. 2001 pg. 293).  This can be when the maker of drawer of a**
**negotiable instrument, such as a promissory note or check, is induced to sign the**
**instrument without a reasonable opportunity to learn of its fraudulent character or essential**
**terms.  Determination of whether an act constitutes fraud in the factum depends upon**
**consideration of "all relevant factors."  Fraud in the factum usually voids the instrument**
**under state law and is a real defense against even an holder in due course.**

| Other State/Common Law Claims-See Below | *Possible* |
|---|---|

### Breach of Contract

**Need to evaluate entire mortgage-servicing history for breach of contract – QWR**
**RECOMMENDATION.**

#### Breach of Implied Covenant of Good Faith and Fair Dealing

The law provides that in every contract, there is an implied duty of good faith and fair dealing between the parties.
This implied covenant imposes the requirement "that neither party will do anything, which will injure the right of
the other to receive the benefits of the agreement."

#### Breach of Fiduciary Duty

In certain situations, courts have implicitly recognized imposing fiduciary duties on lenders based on policy
grounds.  For instance, a lender may be considered a fiduciary when it "takes control" of the borrower, or when
"moral, social, personal, or domestic" relationships are shown to exist between the parties.  (Cases cited in
American Bar Association – Business Tort Litigation (2nd Ed.)  Further, when the lender undertakes to perform a
task on behalf of the borrower, then it is likely that the lender has made itself a fiduciary for the borrower, based
on the law of agency.
Often times, when a loan officer or mortgage broker is helping to arrange a loan for a borrower, that loan
officer/mortgage broker is, in reality, acting as the agent for both the lender and borrower.

The fiduciary duty of the lender is a responsibility to perform their own diligence to determine if a customer is
being placed in a loan that is legal, properly disclosed, is the best loan for the consumer given their financial
circumstance and affordable over the life of the loan if present financial positions hold steady.  If the lender knew

19

or should have known that the Borrower has a likelihood of defaulting on this loan, he/she has a fiduciary duty to the borrower to not place them in that loan (in harm's way).

When a loan transaction occurs, any missteps in the loan transaction process can lead to dire consequences for the borrower.  It is for this reason that the law should impose more liberally a fiduciary relationship between borrower and lender, especially in the residential home loan marketplace where the average borrower is not as sophisticated as the lender.  If fiduciary relationships were more liberally imposed, we would likely see lenders implementing more safeguards before underwriting a loan.

If the lender is aware that the borrowers would be better off with another type of loan that the lender offers, they have violated their duty to the consumers and such act of deception would be likely be considered fraud on the consumer and predatory.

➢   Brokers owe a fiduciary duty to borrowers.

➢   Liability potential for lender may exist if borrower can prove either that: (1) a "special relationship or circumstance" existed, (2) the lender "directly ordered, authorized or participated in" the broker's tortuous conduct, or (3) that broker acted as lender's agent for the transaction.

### Unjust Enrichment

Unjust enrichment is a general equitable principle that no person should be allowed to profit at another's expense without making restitution for the reasonable value of any property, services, or other benefits that have been unfairly received and retained.  The elements to prove this claim are threefold.  First, the plaintiff must have provided the defendant with something of value while expecting compensation in return.  Second, the defendant must have acknowledged, accepted, and benefited from whatever the plaintiff provided.  Third, the plaintiff must show that it would be inequitable or unconscionable for the defendant to enjoy the benefit of the plaintiff's actions without paying for it.

### Unconscionability

The court has the power to refuse to enforce a contract or a clause in a contract that is unconscionable when made.

The common law contract defense of unconscionability could be applied to stop a foreclosure when either the mortgage terms are unreasonably favorable to the lender or certain aspects of the transaction render it unconscionable.[2]

---

[2]*In re Maxwell,* 281 B.R. 101 (banker. D. Mass. 2002); Hager *v. American Gen. Fin. Inc.,* 37 F.Supp.2d 778 (1999).  For example, a Connecticut court found a second mortgage contract to be unconscionable based on the facts that:

### Civil Conspiracy

A civil conspiracy of collusion is an agreement between two or more parties to deprive a third party of legal rights or deceive a third party to obtain an illegal objective.

## OTHER CLAIMS & RECOMMENDED LEGAL RESEARCH
### Note: Federal laws may preempt certain state claims

20

**Fair Debt Collection Practices Act (Fed. & State)**

The FDCPA, 15 U.S.C. § 1692 et seq., a United States statute added in 1978 as Title VIII of the Consumer Credit Protection Act, broadly defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  The Act prohibits certain types of "abusive and deceptive" conduct when attempting to collect debts.

**UCC Provisions**

UCC 3-309.  ENFORCEMENT OF LOST, DESTROYED, OR STOLEN INSTRUMENT. 9. ENFORCEMENT OF LOST, DESTROYED, OR STOLEN INSTRUMENT.

 (a) A person not in possession of an instrument is entitled to enforce the instrument if (I) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

 (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument.

§ 3-301.  PERSON ENTITLED TO ENFORCE INSTRUMENT.

 "Person entitled to enforce" an instrument means (I) the holder of the instrument, (ii) a non-holder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-309 or 3-418(d).  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

---

- The defendant had limited knowledge of English, was uneducated and did not read very well;
- The defendant's financial situation made it apparent she could not reasonably expect to repay the mortgage;
- At the closing, the defendant was not represented by an attorney and was rushed by plaintiff's attorney to sign the loan document;
- The defendant was not informed until the last minute that, as a condition of credit, she was required to pay one year's interest in advance and there was an absence of meaningful choice on the part of the defendant; and
- In addition, the court found that the contract was substantively unconscionable, because it contained a large balloon payment that the borrower had no means of paying, and that the borrower had no reasonable opportunity to understand the terms of the contract.  *Family Fin. Servc. V. Pencer*, 677 A.2d 479, (Conn. Ct. App. 1996); and *Emigrant Mortg., Co., Inc., v. D'Angostino*, 896 A.2d 814 (Conn. Ap. Ct. 2006).

2.  HOLDER IN DUE COURSE

 (a) Subject to subsection (c) and Section 3-106(d), "holder in due course" means the holder of an instrument if:

 (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v)

without notice of any claim to the instrument described in Section 3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 3-305(a).

## § 3-305. DEFENSES AND CLAIMS OF RECOUPMENT.

(a) Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to the following:

(1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;

(b) Except as stated in subsection (d), in an action to enforce the obligation of a party to pay the instrument, the obligor may not assert against the person entitled to enforce the instrument a defense, claim in recoupment, or claim to the instrument (Section 3-306) of another person, but the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the claim against the person entitled to enforce the instrument. An obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument.

## § 3-305. TRANSFER OF INSTRUMENT: RIGHTS ACQUIRED BY TRANSFER

(c) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

Case Law

*Pacific Concrete F.C.U. V.Kauanoe,* 62 Haw. 334,614 P.2d936 (1980),

*GE Capital Hawaii, Inc. v. Yonenaka,* 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001),

*Fooks v. Norwich Housing Authority,* 28 Conn. L. Rptr. 371, (Conn. Super.2000), and
*Town of Brookfield v. Candlewood Shores Estates, Inc.* 513 A.2d 1218, 201 Conn. (1986).

*Solon v. Godbole,* 163 Ill. App. 3d 845, 114 Ill. Dec. 890, 516 N. E.2d 1045 (3Dist. 1987).

*Staff Mortgage. & Inv. Corp.,* 550 F.2d 1228 (9th Cir 1977). "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee.

22

ARTICLE 3
PREDATORY LENDING DATABASE

(Source: P.A. 94-280, eff. 1-1-06)

(765 ILCS 77/70)
Sec. 70. Predatory lending database program.
(a)   As used in this article.
"Adjustable rate mortgage" or "ARM" means a closed-end mortgage transaction
That allows adjustments of the loan interest rate during the first 3 years of the loan
term.
"Borrower" means a person seeking a mortgage loan.
"Broker" means a "broker" or "loan broker", as defined in subsection (p) of Section 1-4
of the Residential Mortgage License Act of 1987.
"Closing agent" means an individual assigned by a title insurance company or a
broker or originator to ensure that the execution of documents related to the closing
of a real estate sale or the refinancing of a real estate loan and the disbursement of
closing funds are in conformity with the instructions of the entity financing the
transaction.
"Counseling" means in-person counseling provided by a counselor employed by a
HUD-certified counseling agency to all borrowers, or documented telephone counseling
where a hardship would be imposed on one or more borrowers.  A hardship shall exist
in instances in which the borrower is confined to his or her home due to medical
conditions, as verified in writing by a physician, or the borrower resides 50 miles or
more from the nearest HUD-certified housing counseling agency.  In instances of
telephone counseling, the borrower must supply all necessary documents to the
counselor at least 72 hours prior to the scheduled telephone counseling session.
"Counselor" means a counselor employed by a HUD-certified housing counseling
agency.
"Credit Score" means a credit risk score as defined by the Fair Isaac Corporation
or its successor, and reported under such names as "BEACON", "EMPIRICA", and
"FAIR ISAAC RISK SCORE" by one or more of the following credit reporting agencies
or their successors: Equifax, Inc., Experian Information Solutions, Inc., and
TransUnion LLC.  If the borrower's credit report contains credit scores from 3
reporting agencies, then the broker or loan originator shall report the middle
score.
"Department" means the Department of Financial and Professional Regulation.
"Exempt Person" means that term as it is defined in subsections (d)(1) and (d)(1.5)
"First-time homebuyer" means a borrower who has not held an ownership interest
in residential property.
"HUD-certified counseling" or "counseling" means counseling given go a borrower
by a counselor employed by a HUD-certified housing counseling agency.
"Interest only" means a closed-end loan that permits one or more payments
of interest without any reduction of the principal balance of the loan, other than
the first payment on the loan.
"Lender" means that term as it is defined in subsection (g) of Section 1-4 of the
Residential Mortgage License Act of 1987.
"Licensee" means that term as it is defined in subsection (e) of Section 1-4 of the
Residential Mortgage License Act of 1987.
of the Residential Mortgage License Act of 1987.
"Negative amortization" means an amortization method under which the
outstanding balance may increase at any time over the course of the loan because
the regular periodic payment does not cover the full amount of interest due.
"Originator" means a "loan originator" as defined in subsection (hh) of Section 1-4

23

of the Residential Mortgage License Act of 1987, except an exempt person.

"Points and fees" has the meaning ascribed to that term in Section 10 of the High Risk Home Loan Act.

"Prepayment penalty" *means a charge imposed by a lender under a mortgage note or rider when the loan is paid before the expiration of the term of the loan.*

"Refinancing" means a loan secured by the borrower's or borrower's primary residence where the proceeds are not used as purchase money for the residence.

"Title insurance company" means any domestic company organized under the laws of this State for the purpose of conducting the business of guaranteeing or insuring title to real estate and any title insurance company organized under the laws of another State, the District of Columbia, or a foreign government and organized to transact the business of guaranteeing or insuring title to real estate in this State.

(a-5) A predatory lending database program shall be established within Cook County.  The program shall be administered in accordance with this Article.  The inception date of the program shall be July 1, 2008.  A predatory lending database shall be expanded to include Kane, Peoria, and Will counties.  The inception date of the expansion of the program shall be Juy2, 2010.  Until the inception date, none of the duties, obligations, contingencies, or consequences of or from the program shall be imposed.  The program shall apply to all mortgage applications that are governed by this Article and that are made or taken on or after the inception of the program.

(b) The database created under this program shall be maintained and administered by the Department.  The database shall be designed to allow brokers, originators, counselors, title insurance companies, and closing agents to submit information to the database online.  The database shall not be designed to allow those entities *to retrieve information from the database, except as otherwise provided in this Article.*  Information submitted by the broker or originator to the Department may be used to populate the online form submitted by a counselor, title insurance company, or closing agent.

(c) Within 10 days after taking a mortgage application, the broker or originator for any mortgage on residential property within the program area must submit to the predatory lending database all of the information required under Section 72 and any other information required by the Department by rule.  Within 7 days after receipt of the information, the Department shall compare that information to the housing counseling standards in Section 73 and issue to the borrower and the broker or originator a determination of whether counseling is recommended for the borrower.  The borrower may not waive counseling.  If at any time after submitting the information required unde4r Section 72 and, within 4 days after receipt of the information re-submitted by the broker or originator, the Department shall compare that information to the housing counseling standards in Section 73 and shall issue to the borrower and the broker or originator a new determination of whether re-counseling for the borrower is recommended for the borrower based on the information re-submitted by the broker or originator. The Department shall require re-counseling if the loan terms have been modified to meet another counseling standard in Section 73, or if the broker has increased the interest rate by more than 200 basis points.

(d) If the Department recommends counseling for the borrower under subsection (c), then the Department shall notify the borrower of all participating *HUD-certified counseling agencies located within the State and direct the* borrower to interview with a counselor associated with one of those agencies. Within 10 days after receipt of the notice of HUD-certified counseling agencies, the borrower shall select one of those agencies and shall engage in an interview with a counselor associated with that agency.  Within 7 days after interviewing the borrower, the counselor must submit to the predatory lending database all of the information required under Section 74 and any other information required by the Department by rule.  Reasonable and customary costs not to exceed $300 associated with counseling provided under the program shall

24

be paid by the broker or originator.  The department shall annually calculate to the nearest dollar an adjusted rate for inflation.  A counselor shall not recommend or suggest that a borrower contact any specific mortgage origination company, financial institution, or entity that deals in mortgage finance to obtain a loan, another quote, or for any other reason related to the specific mortgage transaction; however, a counselor may suggest that the borrower seek an opinion or a quote from another mortgage origination company, financial institution, or entity that deals in mortgage finance.  A counselor or housing counseling agency that in good faith provides counseling shall not be liable to a broker or originator or borrower for civil damages, except for willful or wanton misconduct on the part of the counselor in providing the counseling.

(e) The broker or originator and the borrower may not take any legally binding action concerning the loan transaction until the later of the following:
(1) the Department issues a determination not to recommend HUD-certified counseling for the borrower in accordance with subsection (c); or
(2) the Department issues a determination that HUD-certified counseling is recommended for the borrower and the counselor submits all required information to the data base accordance with subsection (d).

(f) Within 10 days after closing the tile insurance company or closing agent must submit to the predatory lending database all of the information required under Section 76 and any other information required by the Department by the rule.

(g) The title insurance company or closing agent shall attach to the mortgage a certificate of compliance with the requirements of this Article, as generated the certificate of compliance, then the mortgage is not recordable.  In addition, if any lis pendens for a residential mortgage foreclosure is recorded on the property within the program are, a certificate of service must be simultaneously recorded that affirms that a copy of the lis pendens was filed with the Department.  If the certificate of service is not recorded, then the lis pendens pertaining to the residential mortgage foreclosure in question is not recordable and is of no force and effect.

(h) All information provided to the predatory lending database under the program is confidential and is not subject to disclosure under the Freedom of Information Act, except as otherwise provided in this Article.  Information or documents obtained by employees of the Department in the course of maintaining and administering the predatory lending database are deemed confidential.  Employees are prohibited from making disclosure of such confidential information or documents.  Any request for production of information from the predatory lending database, whether by subpoena, notice, or any other source, shall be referred to the Department of Financial and Professional Regulation.  Any borrower may authorize in writing the release of database information.  The Department may use the information in the database without consent of the borrower: (i) for the purposes of administering and enforcing the program; (ii) to provide relevant information to a counselor providing counseling to a borrower under the program; or (iii) to the appropriate law enforcement agency or the applicable administrative agency if the database information demonstrates criminal, fraudulent, or otherwise illegal activity.

(i) Nothing in this Article is intended to prevent a borrower from making his or her own decision as to whether to proceed with a transaction.

(j) Any person who violates any provision of this Article commits an unlawful practice within the meaning of the Consumer Fraud and Deceptive Business Practices Act.

(k) During the existence of the program, the Department shall submit semi-annual reports to the Governor and to the General Assembly by May 1 and November 1 of each year detailing its findings regarding the program. The report shall include, by county, at least the following information for each reporting period:

25

(1) the number of loans registered with the program;
(2) the number of borrowers receiving counseling;
(3) the number of loans closed;
(4) the number of loans requiring counseling for each of the standards set forth in Section 73;
(5) the number of loans requiring counseling where the mortgage originator changed the loan terms subsequent to counseling;
(6) the number of licensed mortgage brokers and loan originators entering information into the database;
(7) the number of investigations based on information obtained from the database, including the number of licensees fined, the number of licenses suspended, and the number of licenses revoked;
(8) a summary of the types of non-traditional mortgage products being offered; and
(9) a summary of how the Department is actively utilizing the program to combat mortgage fraud.

(Source: P.A. 95-69, eff. 6-1-08; 96-328, eff. 8-11-09, 96-856, eff. 12-31-09)

(765 ILCS 77/72)
Sec. 72. Originator; required information. As part of the predatory lending database program, the broke4r or originator must submit all of the following information for inclusion in the predatory lending database for each loan for which the originator takes an application.

(1) The borrower's name, address, social security number or taxpayer identification number, date of birth, and income and expense information contained in the mortgage application.
(2) The address, permanent index number, and a description of the collateral and information about the loan or loans being applied for and the loan terms, including the amount of the loan, the rate and whether the rate is fixed or adjustable, amortization or loan period terms, and any other material terms.
(3) The borrower's credit score at the time of application.
(4) Information about the originator and the company the originator works for, including the originator's license number and address, fees being charged, whether the fees are being charged as points up front, the yield spread premium payable outside closing, and other charges made or remuneration required by the broker or originator or its affiliates or the broker's or originator's employer or its affiliates for the mortgage loans.
(5) Information about affiliated or third party service providers, including closing agents, attorneys, and realtors who are involved with the transaction and the broker originator and any moneys received from the broker or originator in connection with the transaction.
(6) All information indicated on the Good Faith Estimate and Truth in Lending statement disclosures given to the borrower by the broker or originator.
(7) Annual real estate taxes for the property, together with any assessments payable in connection with the property to be secured by the collateral and the proposed monthly principal and interest charge of all loans to be taken by the borrower and secured by the property of the borrower.
(8) Information concerning how the broker or originator obtained the client and the name of its referral source, if any.

(9) Information concerning the notices provided by the broker or originator to the borrower as required by law and the date those notices were given.

(10) Information concerning whether a sale and leaseback is contemplated and the names of the lessor and lessee, seller, and purchaser.

(11) Any and all financing by the borrower for the subject property within 12 months prior to the date of application.

(12) Loan information, including interest rate, term, purchase price, down payment, and closing costs.

(13) Whether the buyer is a first-time homebuyer or refinancing a primary residence.

(14) Whether the loan permits interest only payments.

(15) Whether the loan may result in negative amortization.

(16) Whether the total points and fees payable by the borrowers at or before closing will exceed 5%.

(17) Whether the loan includes a prepayment penalty, and, if so, the terms of the penalty.

(18) Whether the loan is an ARM.

(Source: P.A. 94-280, eff. 1-1-06; 95-691, eff. 6-1-08)

(765 ILCS 77/73)

Sec. 73. Standards for counseling.  A borrower or borrowers subject to this Article shall be recommended for counseling if, after reviewing the information in the predatory lending database submitted under Section 72, the Department finds the borrower or borrowers are all first-time homebuyers or refinancing a primary residence4 and the loan is a mortgage that includes one or more of the following.

(1) the loan permits interest only payments;

(2) the loan may result in negative amortization;

(3) the total points and fees payable by the borrower at or before closing will exceed 5%;

(4) the loan includes a prepayment penalty; or

(5) the loan is an ARM.

(Source: P.A. 95-691, eff. 6-1-08)

(765 ILCS 77/74)

Sec. 74 Counselor; required information.  As part of the predatory lending database program, a counselor must submit all of the following information for Inclusion in the predatory lending database:

(1) The information called for in items (1), (6), (9), (11), (12), (13), (14), (15, (16), (17), and (18) of Section 72.

(2) Any information from the borrower that confirms or contradicts the information called for under item (1) of the Section.

(3) The name of the counselor and address of the HUD-certified housing counseling agency that employs the counselor.

(4) Information pertaining to the borrower's monthly expenses that assists the counselor in determining whether the borrower can afford the loans or loan for which the borrower is applying.

(5) A list of the disclosures furnished to the borrower as seen and reviewed by the counselor, and a comparison of that list to all disclosures required by law.

(6) Whether the borrower provided tax returns to the broker or originator or to the counselor, and, if so, who prepared the tax returns.

(7) A statement of recommendations of the counselor that indicates the counselor's response to each of the following statements:

(A) The loan should not be approved due to indicia of fraud.

(B) The loan should be approved; no material problems noted.

(C) The borrower cannot afford the loan.

(D) The borrower does not understand the transaction.
(E) The borrower does not understand the costs associated
    with the transaction.
(F) The borrower's *monthly income and expenses have been*
    Reviewed and disclosed.
(G) The rate of the loan is above market rate.
(H) The borrower should seek a competitive bid from another
    broker or originator.
(I) There are discrepancies between the borrower's verbal
    understanding and the originator's completed form.
(J) The borrower is precipitously close to not being able to afford
    the loan.
(K) The borrower understands the true cost of debt consolidation
    and the need for credit card discipline.
(L) The information that the borrower provided the originator has
    been amended by the originator.
(Source: P.A. 94-280, eff. 1-1-06; 95-691, eff. 6-1-08.)

  (765 ILCS 77/76)
  Sec. 76.  Title insurance company or closing agent; required information.  As part of
the predatory lending database pilot program, a title insurance company or closing
agent must submit all of the following information for inclusion in the predatory lending
database.

(1) The borrower's name, address, social security number or taxpayer
    identification number, date of birth, and income and expense
    information contained in the mortgage application.
(2) The address, permanent index number, and a description of the collateral
    and information about the loan or loans being applied for and the
    loan terms, including the amount of the loan, the rate and whether
    the rate is fixed or adjustable, amortization or loan period terms,
    and any other material terms.
(3) Annual real estate taxes for the property, together with any assessments
    payable in connection with the property to be secured by the collateral
    and the proposed monthly principal and interest and interest charge
    of all loans to be taken by the borrower and secured by the property
    of the borrower as well as any required escrows and the amounts
    paid monthly for those escrows.
(4) All itemizations and descriptions set forth in the RESPA settlement statement
    including items to be disbursed, payable outside closing "POC" items
    noted on the statement, and a list of payees and the amounts of
    their checks.
(5) The name and license number of the title insurance company or closing
    agent together with the name of the agent actually conducting the
    closing.
(6) The names and addresses of all originators, brokers, appraisers, sales
    Persons, attorneys, and surveyors that are present at the closing.
(7) The date of closing, a detailed list of all notices provided to the borrower
    at closing and the date of those notices, and all information
    indicated on the Truth in Lending statement and Good Faith
    Estimate disclosures.
(Source: P.A. 94-280, eff. 1-1-06.)

  (765 ILCS 77/78)
  Sec. 78.  Exemption.  Borrowers applying for reverse mortgage financing of residential
real estate including under programs regulated by the Federal Housing Authority (FHA)
require HUD-certified counseling are exempt from the program and may submit a
HUD counseling certificate to comply with the program.
(Source: P.A. 95-691, eff. 6-1-08.)

(765 ILCS 77/80)
Sec. 80. Predatory Lending Database Program Fund.  The Predatory Lending Database Program Fund is created as a special fund in the State treasury.  Subject to appropriation, moneys in the Fund shall be appropriated to the Illinois Housing Development Authority for the purpose of making grants for HUD-certified counseling agencies participating in the Predatory Lending Database Program to assist with implementation and development of the Predatory Lending Database Program.
(Source: P.A. 95-707, eff. 1-11-08.)

(765 ILCS 77/Art. 4 heading)

ARTICLE 4
EFFECTIVE DATE

(Source: P.A. 94-280, eff. 1-1-06.)

(765 ILCS 77/99)
Sec. 99. This Act take effect on October 1, 1994.
(Source: P.A. 88-111.)

# EXHIBIT "E" ATTACHED

# (HEREUNDER)

After Recording Return to:
Northwest Trustee Services, Inc.
Attention: Chris Ashcraft
P.O. Box 997
Bellevue, WA 98009-0997

**200906603001628**
FIRST AMERICAN ADT          14.00
PAGE001 OF 001
06/03/2009 13:51
KING COUNTY, WA

7258.25953/Fidel, Daisy and Divina, Corazon

## Assignment of Deed of Trust

4130494   O/14
1ST AM

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Trust 2006-1, whose address is 7255 Baymeadows Way MS: Jaxa 2035, Jacksonville, FL, 32256, all beneficial interest under that certain deed of trust, dated 11/03/05, executed by Daisy D. Fidel, a married woman as her separate estate and Corazon A. Divina, a married woman as her separate estate, Grantors, to Chicago Title Insurance Company, Trustee, and recorded on 11/10/05, under Auditor s File No. 20051110002197, Records of King County, Washington, describing land therein as:

Lot 31, Meridian Trace, According to the plat thereof, recorded in Volume 92 of plats, page 92, in King County, Washington.

Tax Account No. 546930-0310-02

Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated ___May 13___, 20 09

Washington Mutual Bank as successor in interest to Long Beach Mortgage Company by operation of law, by JPMorgan Chase Bank, National Association, as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA (the "Savings Bank") from the Federal Deposit Insurance Corporation, acting as receiver for the Savings Bank, and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C § 1821(d)

By:_____
Title:___Jodi Sobotta___  **Attorney in Fact**

STATE OF ___MN___ )
                   ) ss.
COUNTY OF ___Dakota___ )

I certify that I know or have satisfactory evidence that ___Jodi Sobotta___ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the ___attorney in fact___ of ___JPMorgan Chase Bank, National Association___ to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: ___5-13-2009___

[Notary Seal:
SHOUA MOUA
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2012]

NOTARY PUBLIC in and for the State of ___mn___
Residing at ___Washington___
My commission expires ___1/11___

# EXHIBIT "F" ATTACHED

# (HEREUNDER)

AFTER RECORDING MAIL TO:

Name:  Corazon A. Divine and Daisy D. Fidel
Address:  25311 150th Place SE
City, State, Zip:  Covington, WA 98042

Filed for Record at Request of:

Chicago Title Company

**20051110002194**
CHICAGO TITLE  WD          34.00
PAGE001 OF 003
11/10/2005 15:33
KING COUNTY, WA

**E2168479**
11/10/2005 15:30
KING COUNTY, WA
TAX      $1,544.00
SALE    $285,000.00

PAGE001 OF 001

CH·1172SSZ·11
(3)

## STATUTORY WARRANTY DEED

**THE GRANTOR(S) Divina M. Tablit and Carlos Tablit, Jr., wife and husband**

for and in consideration of $10.00 and good and other valuable considerations

in hand paid, conveys, and warrants to Corazon A. Divine, a married woman as her separate estate and
Daisy D. Fidel, a married woman as her separate estate
the following described real estate, situated in the County of King, state of Washington:

See "Exhibit A" attached hereto and made a part hereof on page 2.

Abbreviated Legal: Lot 31, Vol. 92, Page 92.

Subject to easements, reservations, covenants, conditions, restrictions and agreements of record as set
forth under Exhibit "B" attached hereto and made a part hereof on page 3.

Assessor's Property Tax Parcel/Account Number:  546930-0310-02

Dated:  11/02/05

_Carlos Tablit Jr._                         _Divina M Tablit_

Carlos Tablit, Jr.                          Divina M. Tablit

STATE OF _Washington_
                                 } ss.
COUNTY OF _King_

I certify that I know or have satisfactory evidence that _Carlos Tablit Jr., Divina M. Tablit_
(is/are) the person(s) who appeared before me, and said person(s) acknowledged that (he/she/they) signed this instrument
and acknowledged it to be (his/her/their) free and voluntary act for the uses and purposes mentioned in this instrument.

Dated:  11·02·05

_Sonya B. Hansen_
Notary Public in and for the state of _Washington_
My appointment expires: _09·09·07_

SONYA B. HANSEN
COMMISSION EXPIRES
NOTARY
PUBLIC
09-09-07
STATE OF WASHINGTON

LPB-10 7/97

Exhibit "A"

LOT 31, MERIDIAN TRACE, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 92 OF PLATS, PAGE 92, IN KING COUNTY, WASHINGTON.

Unofficial Document

Exhibit "B"

1. UNDERGROUND UTILITY EASEMENT AND THE TERMS AND CONDITIONS THEREOF:

GRANTEE:                        PUGET SOUND POWER & LIGHT COMPANY
PURPOSE:                        UNDERGROUND TRANSMISSION AND
                               ELECTRIC LINES AND APPURTENANCES
                               THERETO
AREA AFFECTED:                 FIVE FEET PARALLEL AND ADJACENT TO
                               THE ROAD FRONTAGE OF EACH LOT
RECORDED:                      OCTOBER 16, 1970
RECORDING NUMBER:              6704710

CONTAINS COVENANT PROHIBITING STRUCTURES OVER SAID EASEMENT OR OTHER
ACTIVITIES WHICH MIGHT ENDANGER THE UNDERGROUND SYSTEM.

2. RESTRICTIONS CONTAINED ON THE FACE OF THE PLAT AS FOLLOWS:

NO LOT OR PORTION OF A LOT IN THIS PLAT SHALL BE DIVIDED AND SOLD OR
RESOLD, OR OWNERSHIP CHANGED OR TRANSFERRED WHEREBY THE OWNERSHIP OF
ANY PORTION OF THIS PLAT SHALL BE LESS THAN THE AREA REQUIRED FOR THE
USE DISTRICT IN WHICH IT IS LOCATED.

3. COVENANTS, CONDITIONS AND RESTRICTIONS CONTAINED IN INSTRUMENT, BUT
OMITTING ANY COVENANTS OR RESTRICTIONS, IF ANY, BASED UPON RACE,
COLOR, RELIGION, SEX, SEXUAL ORIENTATION, FAMILIAL STATUS, MARITAL
STATUS, DISABILITY, HANDICAP, NATIONAL ORIGIN, ANCESTRY, OR SOURCE OF
INCOME, AS SET FORTH IN APPLICABLE STATE OR FEDERAL LAWS, EXCEPT TO
THE EXTENT THAT SAID COVENANT OR RESTRICTION IS PERMITTED BY
APPLICABLE LAW:

RECORDED:                      OCTOBER 19, 1970
RECORDING NUMBER:              6705147

AMENDMENT AND/OR MODIFICATION OF SAID RESTRICTIONS:

RECORDED:                      SEPTEMBER 17, 1974
RECORDING NUMBER:              7409170154

4. RIGHT OF THE PUBLIC TO MAKE NECESSARY SLOPES FOR CUTS OR FILLS UPON

# EXHIBIT "G" ATTACHED

# (HEREUNDER)

After Recording Return to:
Chris Ashcraft
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

**20090603001629**
FIRST AMERICAN AST
PAGE001 OF 001            14.00
06/03/2009 13:51
KING COUNTY, WA

## Appointment of Successor Trustee

File No. 7258.25953          1ST AM    4130494        0114

    Daisy D. Fidel, a married woman as her separate estate and Corazon A. Divina, a married woman as her separate estate is/are the grantor(s), Chicago Title Insurance Company is the trustee and Long Beach Mortgage Company is the beneficiary under that certain deed of trust dated 11/03/05 and recorded on 11/10/05 under King County, Washington Auditor s File No. 20051110002197.

    The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

    The undersigned present beneficiary warrants and represents that, as of the date this Appointment of Successor Trustee has been executed and acknowledged, it is the owner and holder of the obligation secured by the subject deed of trust and is not holding the same as security for a different obligation.

                                     **Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Trust 2006-1 by JPMorgan Chase Bank, National Association its Attorney in Fact**

                                       By _Barbara Hindman_

                                       **Barbara Hindman**       **Vice President**

STATE OF ___**Florida**___ )
                            )ss
COUNTY OF ___**Duval**___ )

    I certify that I know or have satisfactory evidence that ___**Barbara Hindman**___ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the ___**Vice President**___ of ___**JP Morgan Chase Bank National Association**___ to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

    Dated: ___05/29/2009___

VELIDA MEDIC
Commission DD 694510
Expires July 12, 2011
Bonded Thru Troy Fain Insurance 800-385-7019

_Velida Medic_
Notary Public in and for the State of ___**Florida**___
Residing at ___**Jacksonville**___
My appointment expires _____

**NORTHWEST TRUSTEE SERVICES, INC.**
P.O. BOX 997
BELLEVUE, WA 98009-0997
425-586-1900     FAX 425-586-1997

**Client:**  Washington Mutual Bank
**Borrower:** Fidel, Daisy and Divina, Corazon

                         **SERVING WASHINGTON, OREGON, IDAHO & ALASKA**